### HICKS and others *vs.* WHITMORE.

The *memorandum of contract of sale* of an *auctioneer* must be made in a *sale book* at the *time* and *place of sale*, or the contract cannot be enforced ; it is not enough that a minute in pencil be made at the place of sale of the *sums bid* and of the *name of the highest bidder*, although an entry be immediately thereafter made in a sale book, setting forth all the particulars prescribed by statute, *if such entry be made at a place different from that where the sale was had.* So HELD in this case, in which the auctioneer, immediately after the sale of a brig at the Merchants' Exchange in New-York, went to his counting room, in a different building in the same street, and there made the entries in his sale book.

*It seems* that the entries of an auctioneer of sales effected by him, ought to be made in a book, called a *sale book*, exclusively appropriated to such entries.

The entry in the sale book of the name of an agent, factor, consignee, or of any person having legal authority to sell, is a compliance with the requirement of the statute that " the name of the person on whose account the sale is made" shall be entered.

An action upon the contract may be maintained by the owners of the property, although their names be not mentioned in the entry of the memorandum of contract of sale.

Where, by the terms of an auction sale, the purchaser is to give *approved endorsed notes* at six months, *it seems* that the vendor is not in fault for not approving and accepting notes offered him by the vendee, unless he knows the notes to be good, or is furnished with the means of ascertaining them to be so.

THIS was an action of *assumpsit*, tried at the New-York circuit in January, 1832, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was brought to recover the *difference* between the *first* and *second* sales of a brig, at *auction.* She was struck off to the defendant, at the first sale, at $3150 ; the terms of sale

were, *approved endorsed notes* at six months. The plaintiffs alleged that the defendant having failed to tender approved endorsed notes, they re-sold the brig at auction after notice to the defendant, and upon such re-sale she brought only $2550. They claimed to recover the difference between that sum and the amount bid by the defendant at the first sale. The brig was sold by an *auctioneer*, at the Merchants' Exchange in the city of New-York, on the 18th December, 1830, and the terms of sale were declared to be " approved endorsed paper at six months." The defendant bid $3150, at which sum the vessel was struck off to him. The auctioneer testified that it is customary to put down the bids upon paper, and that he made at the time a minute in pencil of the sums bid, and of the name of the highest bidder, but that the memorandum in pencil did not contain the names of the owners of the vessel or of the person on whose account the sale was made ; that from the minute in pencil he made a memorandum in his *sale book* thus : "Dec. 18, 1830. W. W. & E. Thompson, sell'g the brig Anna Maria to Swanton Whitmore for $3150— terms, approved endorsed note at 6 mos. $10." He further testified that the vessel was put up at auction at *two o'clock*, P. M., that he was from 15 to 20 minutes making the sale, and went immediately to his counting house in Wall street, near Pearl street, and made the entry in his book ; that he has no doubt it was made before *three o'clock*, P. M. He further testified, that a day or two after the sale, the defendant called upon him and offered to procure the name of M. L. & Co. upon the endorsement of his paper. He communicated the offer to the owners of the vessel, who said they would make inquiries, and who afterwards told him that they were not satisfied ; he also made inquiries for his own satisfaction, and did not get satisfactory information. Several days thereafter he told the defendant the paper was not satisfactory, who answered that he could not give him any other. On the 28th December, the auctioneer wrote to the defendant that unless he complied with the terms of the sale before five o'clock of the afternoon of that day, the brig would be advertised to be sold at public auction on the 31st inst., at 2 o'clock, at the Merchants' Exchange, *on his account*, holding him lia-

ALBANY,
Oct. 1834.

Hicks
v.
Whitmore.

ble for any deficiency, and accounting to him for any surplus. The vessel was accordingly advertised, and on the 31st December sold at public auction for $2550. On the day of sale, the auctioneer received a letter from the defendant, dated on that day, in which, after adverting to the advertisement, the defendant observes that he repeats what he had before stated to the auctioneer on the evening of the 28th, that he had fully performed all his contract, and that after the refusal to convey to him the vessel, he did not consider himself in the least degree interested in the vessel or the proceeds. The auctioneer further stated, on the cross-examination of the defendant's counsel, that he did not know *Robert T. Hicks* or *George Maxwell*, who were joined as plaintiffs in this suit with William W. Thompson and Edward Thompson; that he was employed by the Messrs. Thompson to sell the vessel, that they transacted business together under the name of W. W. & E Thompson, and that the firm of W. W. & E. Thompson consisted only of themselves. The master of the brig however, who was master at the time of the sale, testified that the vessel *belonged to the plaintiffs.*

The counsel for the defendant moved for a non-suit, on the grounds, 1. That the memorandum made at the sale was not in conformity to the statute; 2. That the memorandum entered in the sale book did not specify the names of the persons on whose account the sale was made, or the owners of the vessel: that *all* the plaintiffs appeared to be the owners, and the memorandum contained the names of *only* two of them; and 3. That the memorandum was not made at the time of sale, but afterwards and in another place. The judge ruled in favor of the *defendant,* but recommended that the trial should proceed, and if a verdict was found for the plaintiffs, that it should be subject to the opinion of this court upon the questions of law arising in the case; to which proposition the parties assented.

The defendant then offered to prove that the credit of N. L. & Co. was good and that the paper offered by him ought to have been approved and accepted. The plaintiffs' counsel objected to the testimony, unless followed up by proof that the plaintiffs knew, or were furnished by the defendant with

the means of knowing, that the paper was good. The judge overruled the objection, and several witnesses testified that, at the time of the sale, they considered the firm of N. L. & Co. good for the amount at six months. On the other hand, there was proof that they were not considered good for the amount. Two auctioneers testified, in answer to the question as to what was to be understood by the terms *approved paper* in sales of this kind, that it was understood to be that the *vendor* was to judge of its goodness, or, in other words, that it was to be approved by the vendor. This latter testimony was objected to, but the objection was overruled. The judge charged the jury that the legal import of the terms *approved endorsed notes* was, that they should be such notes as, under all the circumstances of the case, the vendor ought to accept—not merely good notes, but such as the *vendor* either knew, or had the means afforded him of conveniently ascertaining to be unequivocally good; or in other words, such as a prudent and discreet man would, under the circumstances of the case, accept—adding that, to require a vendor to accept of any other notes would deprive him of the right of exercising his own judgment, which he had expressly reserved; and, on the other hand, to allow him to refuse such notes would put in his power to evade his contract with the vendee. The jury found for the plaintiffs, with $670 damages. The case was submitted on written arguments by

*T. W. Tucker & S. A. Crapo*, for the plaintiffs,

*S. P. Staples*, for the defendants.

*By the Court*, SAVAGE, Ch. J. The principal question is whether the auctioneer made an entry in his sale book, in conformity with the statute. The *fourth section* of our present statute of frauds, 2 R. S. 136, is as follows : " Whenever goods shall be sold at public auction, and the auctioneer shall, at the time of sale, enter in a sale book a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser, and the name of the person on whose account the sale is made, such memorandum

shall be deemed a note of the contract of sale, within the meaning of the last section. The section referred to is that which declares void every contract for the sale of goods, chattels, or things in action, for the price of fifty dollars or more, unless a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby.

The fourth section of the statute is new, and comes up now for the first time to receive a construction ; and the question is, whether the memorandum made by the auctioneer in this case is a compliance with the statute. The statute was no doubt made in reference to the law as it existed at the time, and was intended to remove all doubt or uncertainty, if any existed, as to the contents of the memorandum. It must be admitted that it had not been settled, with any degree of precision, what memorandum made by an auctioneer would be sufficient. The subject had been discussed in the case of *Hinde* v. *Whitehouse*, 7 East, 558. There sugars were sold at auction by a printed catalogue, and the auctioneer wrote down, in the same line with the lot purchased, the name of the purchaser, and price. It was objected ·that the whole contract must appear upon the paper signed by him with the names of the defendants, and that the conditions of sale, which formed a material part of the contract, were not signed, nor in any way connected except by parol testimony. Lord Ellenborough, after discussing the question, comes to the conclusion, that the auctioneer is the agent of both parties; and that the mere writing on the catalogue, having no reference to the conditions of sale, was not a memorandum, such as the statute requires. Our legislature have undertaken to specify what the memorandum shall contain ; and we cannot err, I think, by requiring a strict compliance with the terms of the statute. The particulars are, 1. The nature and price of the property sold : this is done in the memorandum, by stating the sale of the brig Anna Maria for $3150. 2. The terms of the sale : this is complied with, by stating the sale to be for approved notes at six months. 3. The name of the purchaser : this was done, by stating the selling of the brig Anna Maria to Swanton Whitmore. 4. The name of the person on whose account the sale is made : the expression

here is somewhat peculiar. It is not the name of the vendor or owner, but of the person on whose account the sale is made, which may well be complied with, by inserting the name of the agent, factor or consignee. From the phraseology used, I infer that the legislature intended it should not be necessary to insert the name of the real owner, but that it should be sufficient to insert the name of any person having legal authority to sell. If such is the meaning of the statute, then there has been a compliance with this requirement, as the names of two persons are inserted as vendors. It is not necessary that the suit should be brought by the same person or persons, on whose account, as appears from the note or memorandum, the sale was made. The real owner or owners are proper persons to bring the suit, although the sale may have been made by an agent or factor. The suit therefore is well brought by the present plaintiffs. Other particulars respecting the memorandum are, that it shall be entered in the *sale book* of the auctioneer, and *at the time of the sale.* The memorandum in this case was entered in the sale book of the auctioneer, and perhaps in that particular is a compliance ; but it cannot escape notice, that this memorandum is a mere charge by the auctioneer against his employer, and seems to have been entered as such, and not as a record of the proceedings of a public agent. Much has been said in argument as to the *time* when the entry was made. A memorandum was made at the time of the sale, that is, as the biddings progressed, and when the property was struck off to the defendant, an entry of his name was made before the auctioneer proceeded to any other business ; but no entry was made in the sale book, until the auctioneer left the exchange and went to his own counting room. The memorandum made in pencil was clearly not a compliance with the statute, because it was not made in the sale book. The statute says that certain contracts by *parol* shall be void, unless certain things are done. It is not enough that a memorandum shall be made, but it shall be entered in the sale book of the auctioneer—not in any other book, his day book or his leger, as such, but a book in which he enters his transactions of sales.

Vol. XII.                    70

I do not mean to say that he may not make his day book his sale book; but the legislature evidently intended that the auctioneer should keep a book called a sale book, which should contain an entry of his sales. The memorandum must also be entered *at the time of sale.* If these words are taken literally, they are perfectly clear and intelligible; but if we say that the time of sale means one hour after the sale, we shall find ourselves legislating, and appointing a different time from that mentioned by the legislature. There is no more difficulty in the auctioner making an entry in a book than on a scrap of paper; and if he is so situated that he cannot write with ink, he can write with a pencil. Such an entry is good. It shall be done *at the time*, that is, before any other business shall engross the attention; it shall be done at the consummation of the bargain, when no occurrence shall have happened to obliterate it from the memory. What was said by Lord Erskine in *Buckmaster* v. *Hanop*, 13 Vesey, 471, about the auctioneer taking minutes and putting down initials to enable him afterwards to do the formal act, is not applicable here. That is what the legislature intended to prevent. The judge at the circuit was of opinion that the memorandum was not a compliance with the statute. In this, I think, he was right, and of course judgment of nonsuit must be entered.

It is unnecessary to express an opinion upon any other point in the cause. The view of the judge at the circuit, as to what is meant by approved endorsed notes, seems to be consistent with reason and common sense. The notes must be such as the party who is to receive them approves, or cannot reasonably reject; but to subject a vendor to loss for refusing to approve and receive endorsed notes, it should appear that the notes were good, and that there was no just cause to doubt their sufficiency.

Judgment of nonsuit.