Mr. Justice WOODBURY
 

 delivered the opinion of the court.
 

 The original proceeding in this case was a bill in equity. The complainants are heirs and devisees of William F. Taylor, being aliens and resident in Scotland. He was a naturalized citizen of South Carolina. The respondent was George M. Savage of Alabama,.prosecuted there as executor of Samuel Savage.of that State. The claim set up in the bill was, that William F. Taylor, before his death in A. D. 1811, made a will, devising the residue of his estate, after the payment of a few legacies, to the complainants, directing all his property to be first sold and converted into money, and malting the said Samuel Savage one of his executors, associated with three others. • It was further alleged, that the business was divided between them, and each had settled for what he took in charge, except Savage, who had not accounted fully for the property received by him in South Carolina, or the proceeds of certain lands of William F. Taylor in Kentucky sold by Savage, and that by his negligence large quantities of other lands situated there had been lost.
 

 The original answer denied that the executors took out letters testamentary, except in South Carolina, dr assumed any trusts as to
 
 *261
 
 the property of the testator beyond the limits of that State, or ever provhd the will in Kentucky. It also denied that any part of William F. Taylor’s property in South Carolina had not been duly accounted for. As to lands in Kentucky, it averred that the testator owned none, and, though he set up some title to about 4,X00 acres, that it was invalid, and was compromised and released by an agent of the complainants in A. D. 1836. That, as the latter were aliens, the title in the mean time had escheated to the State ; the executors having, as alleged, only a bare power to sell, and some of them dying before Á. D. 1818^ this power could not be exercised by the others. And though it admitted, that Samuel Savage in that year executed deeds of about one fourth of the land claiméd by the testator, receiving a small consideration therefor, yet it contended that no title passed thereby, and.that no court out of the State of South Carolina had any jurisdiction over the matter. The statute of limitations was also pleaded to all the claims.
 

 . Some other particulars,'and some amendments of the answer, which may be found material in the progress of the inquiry, will be noticed as occasion shall require.
 

 A preliminary question has been raised in this court, in' consequence of whát had taken place in the progress of the cause, which it may be proper to dispose of first. , After judgment had been rendered in the Circuit Court in favor of the complainants for a portion of their claims, and before an appeal was taken, George M. Savage, the executor of Samuel, was removed, and Vincent M. Ben-ham appointed administrator
 
 de .bonis non
 
 of Samuel Savage, with the will annexed. The cause was then entered in this court, and attempted to be proceeded in, but was directed, to be remitted to the Circuit Court in order first to make Benham a party (1 Howard, 282, and 2 Howard, 395). This having been done, the case came here again, and now it is objected, at the threshold, to any examination of the original questions in the case, that an administrator
 
 de bonis non
 
 is not liable for assets in the hands of the deceased executor. See Grant
 
 v.
 
 Chambers, 4 Mass. R. 611; Alsop
 
 v.
 
 Marrow, 8 Conn. R. 584 ; 1 Serg. & R. 549 ; 1 Gill & Johns. 207; and other cases cited.
 

 But if the correctness of these decisions be not doubtful at law, they may require several exceptions and limitations in equity. See Blower
 
 v.
 
 Massetts, 3 Atkins, 773; 2 Ves. sen. 465; Mitford’s Pleadings, 64, 78; 2 Vern. 237; Fletcher’s Administrator
 
 v.
 
 Wise, 7 Dana, 347; 1 Howard, S. C. 284, in this case. And it is clear, that under a statute of Alabama, which must, by the thirty-fourth section of the Judiciary Act, govern this case, the objection cannot be sustained. This statute provides, that “ where any suit may have been commenced, on behalf of or against the personal representative or representatives of any testator or intestate, the same may be prosecuted by or against' any person or persons who
 
 *262
 
 may afterward succeed to the administration or executorship ; such person or persons may, at any time, be made parties, on motion, and the cause shall proceed in the same manner, and judgment .therein be in all respects as. effectual, as if the same were prosecuted by or .against the parties originally named.” Passed September 4th, 1821. See Clay’s Digest, 227.
 

 The grounds or causes for relief presented in the bill are next to be examined, and are two. One is the claim on account of an alleged failure by Samuel Savage to settle, as executor in South Carolina, for a debt due from himself to, William F. Taylor, and some other debts collected there, with proper -interest thereon. This is the first ground on the merits ; and it may be better considered separate from the second one,, which is the ¿mount demanded for alleged neglects and receipts of money by Savage in. relation to the lands situated in Kentucky. The property left by the testator in South Carolina was held in his own. right, and the proceeds of it were collected by the executor by virtue of his letters testamentary. The first objection interposed to the claim respecting thát is,, that in point of fact nothing is shown to have been due or collected there which the executor did not account for, ánd finally settle, and pay over the balance, April 22d, 1818. . Another is, that if any thing collected diere and. then omitted,, or not since paid over, should now be accounted for, it ought to be in the State of South Carolina, where the letters issued, and not in Alabama. Or, at all events, that some action must first be had in South Carolina, and the account reopened, and the new matters examined and charged ■there upon Samuel Savage, one of the original executors, before he. or George M. Savage, his executor, can be prosecuted elsewhere for the amount. The following cases may be referred to in support of such a position. Vaughan et al.
 
 v.
 
 Northup et al., 15 Peters, 1; 1 Peters, 33; Story’s Confl. of Laws, 513; Aspden et al.
 
 v.
 
 Nixon, 4 Howard, 467; Carmichael
 
 v.
 
 Ray, 1 Richardson, 116. While others may be seen against it in 14 Peters, 116; 15 Peters, 119; 2 Wash. C. C. 338.
 

 But it is to be recollected, that the statute of limitations is pleáded against this no less than the other claim ; and hence, if, on examination, that statute, or the great length of time which has elapsed since 1818, should be found, under all the circumstances of the case; to render -a recovery of any part of this claim illegal or inequitable, a decisive opinion on the other points just mentionéd will become unnecessary.
 

 We therefore proceed-to inquiry into this first.
 

 The settlement in IS 18 seems to have been a final one ; the balance was paid over to an agent of the plaintiff then present; and the executor, Samuel Savage, soon after left the State, and, for aught which appears, never returned again. ■ The statute, if running at all as to the matters in South Carolina, should, therefore, as a
 
 *263
 
 general principle, begin in 1818 ; and any special excuse for not suing the executor within six years for any- thing not then accounted for, such as coverture, minority, or residence abroad^ ought in equity as well as law to have been set up in the bill originally (7 Johns. Ch. R. 74) ; or by an amendment of it, allowed after the answer, instead of a special replication, as provided by the 45th rule of this court. See Marstaller et al.
 
 v.
 
 M’Clean, 7 Cranch, 156, and Miller v. McIntyre, 6 Peters, 64.
 

 But, notwithstanding this omission, as some doubts exist whether the statute of limitations cap technically apply to a. claim situated like this, we have looked further, — to the circumstances of laches and long neglect by the complainants, independent of the statute. And they seem to us to operate in equity very conclusively against going back of an executor’s account, thus formally and finally settk d, after the lapse of twenty years and the death of the parties concerned. Gardner
 
 v.
 
 Wagner, 1 Baldwin, 394, 454. It must be a very strong case of fraud,.proved in such a settlement, or of clear accident or mistake, which could ever make it just, under such circumstances, to reopen and revise it. 9 Leigh, 393.
 

 Considering, then, that the agent of the complainants, present at the final settlement of the account and. receiving the balance, had, for aught which appears, a full opportunity to know all the circumstances, and make objections if he pleased, and that no fraud or mistake is shown in the settlement, whatever error in law may have happened in computing interest, we consider it as a very proper case for length of time, to-bring repose. In support of. this may be seen the following cases. 1 Sch. & Lef. 428; 2 ibid. 309; 10 Wheat. 152; 1 Madd. Ch. R. 99; 2 ibid. 308; Miller
 
 v.
 
 McIntyre, 6 Peters, 66, 67; Cholmondely
 
 v.
 
 Clinton, 2 Jac. & Walk. 1; 9 Peters, 62; 6 John. Ch. R. 266; 7 ibid. 90.
 

 The other claim for the money received by Samuel Savage, on account of his conveyance of a portion of'the lands situated in Kentucky, and to which William F. Taylor set up' an interest, rests on principles entirely different, both as regards the title of Taylor and the responsibility of’ Savage. It does not seem to have been considered fully, heretofore, that those lands did not belong to William F. Taylor, hke the rest of his property in South Carolina, absolutely as his own in fee. They came to him by a deed in trust for others, from- Mary Forbes, administratrix of William Forbes, who was uncle of William Forbes Taylor, and a naturalized citizen of Pennsylvania, dying without issue except a son, Nathaniel, who also died without issue after William F. Taylor’s death in A. D. 1811, and before September, 1815. The facts in the case do not. seem to fix the time with any greater certainty. These lands, amounting to about 4,400 acres, had been conveyed to William Forbes in fee, in A. D.. 1786, by one Daniel Broadhead, and by Forbes to John Philips, in A.’D. 1794. They seem to have remained in Philips’s
 
 *264
 
 hands till June 3d, A. D. 1802, when he conveyed them .to the said Mary, the administratrix of William Forbes, with the following limitation in the deed, viz. : — “in trust, nevertheless, to and for the only proper use and behoof of the right heir or heirs of the above-named William Forbes, deceased, in such way and manner as such heir or heirs may order, direct, and appoint.”
 

 On the 17th day of September, 1805, she, as before mentioned, conveyed them to William Forbes Taylor, the nephew of her husband, and his only heir or relative naturalized in this country, ex-, cept the son Nathaniel, the rest being aliens in Scotland, and the son in such health as not likely long to survive. The lands were, therefore, in danger of escheating to the State of Kentucky, or a part o'f them at least, unless so conveyed as to pass an interest to some person here, which could be held in behalf of those heirs who might reside abroad, so that their shares might not be lost or forfeited. The limitation in the deed to William F. Taylor from Mary Forbes was the same in form as that in the conveyance to-her, except the clause creating the trust begins “ in witness nevertheless,” instead of “ in trust nevertheless.” Whether this is an error of the press, or in copying, or an intended alteration, is not stated, but it seems not to have been contended in argument, that any different meaning was designed to be attached to the expression. After receiving such a conveyance for such a. purpose, it appears that in 1808, William F. Taylor instituted thirty-three suits in ejectment in the State of'Kentucky against settlers on these lands, which were pending at his death in A. D. 1811. But, as the actions were in the name of nominal lessees, they did not abate by his death, but continued on the docket till a recovery was had in all of them, in January, 1818.
 

 Prior to this recovery, and subsequent to the death of William F. Taylor in 1811, it does not appear that any of his executors, or any of the heirs of William Forbes, or any of the devisees of William F. Taylor, did any thing respecting these lands, except this. Samuel'Savage, in his administration account rendered in December, 1812, charged for a journey to Kentucky in relation to them. And on the 14th of September, 1815, Mary Taylor and her husband gave a power of attorney to Patrick McDowell and Samuel Taylor, to collect her share not only in the estate • of William F.C Taylor, but in the íands in Kentucky of which she claimed to be one of the heirs, in conjunction with Samuel Taylor, from Nathaniel, the son of William Forbes, and their mother Elizabeth. Samuel Taylor soon after, in 1816, visited this country, and on the 2d of April .in that year appointed Adath Hutchinson and Peter Bennock attorneys for himself and sister, not only to collect and receive what was due to them from the estate of William F. Taylor, but to prosecute all actions necessary to recover the real estate in Kentucky belonging to. him and hi§ sister. But notwithstanding this, and not
 
 *265
 
 exactly in keéping with it, on the 26th of September, 1817, Samuel Savage, rather than these attorneys, writes a letter to Samuel Taylor about the Kentucky lands, as well as the estate of William F. Taylor in South Carolina, then unsettled. And to show the further progress as to these lands after the recoveries in 1818, it does not appear that any of the heirs or their agents took possession of them under the judgments, or did any thing in respect to them till 1837. But, on the contrary, Samuel Savage visited Kentucky in July, 1818, having removed from South Carolina to Tennessee in May previous, and sold about one fourth of the lands to the occupants for $2,118, calling himself, in the deeds, “ surviving executor of the last will and testament of William Taylor,” and
 
 “
 
 authorized ” to sell by the will. The other occupants, who did not buy of him, took out soon afterwards injunctions against the judgments recovered, and continued to possess the. lands peaceably till William Primrose, an attorney of the complainants, visited Kentucky in 1837 to look after their interests.
 

 The previous special attorneys had not interfered, as Hutchinson, one of them, soon died, and Bennock, the other, declined to act. And Samuel Taylor, in letters to him in 1824 and 1825, inquiring, among other things, if Savage had returned to South Carolina and exhibited any further account of his doings in the ordinary’s court, makes no mention of the Kentucky lands.
 

 Primrose, soon ascertaining that, in 1818, Savage had sold about eleven hundred acres of them, and the rest had been suffered to remain in the possession of the former occupants, persuaded the latter to give him something more for a release or quitclaim, but a sum, including what had been paid to Savage, not at all equal to their full value.
 

 It is a very important fact, in connection with this arrangement, that Primrose, though at first denying the validity of Savage’s doings, was compelled, in order to effect a compromise with the occupants and obtain something more on a settlement, finally to agree, under his hand and seal, in behalf of the plaintiffs, “ as far as it is in their power to do so, to ratify and confirm the deed made as aforesaid by the said Savage,” but “reserve to themselves the benefit of all claims they may have against the said Savage or his representatives for the consideration which the said Savage received for the sale of the land aforesaid.” After executing the releases, he visited Samuel Savage, in Alabama, and demanded of him the money he had received in behalf of the heirs, and indemnity for injuries they had sustained by his alleged neglect in respect to all the lands.
 

 Another material circumstance is very imperfectly stated in the record ; but it is probably thus. When William F. Taylor died, in 1811, both Nathaniel, the son of William Forbes, and Elizabeth,
 
 *266
 
 the sister of William Forbes, being the mother of Taylor, were aliens,
 

 On'these facts, it is next to be decided, whether the interests of the complainants were such in the lands in Kentucky, when Samuel Savage sold a part of. them, in 1818, as to make him liable to the complainant for his conduct, wherever he might reside ; and, if so, to what extent. It is first manifest, from a part of the statement, that the interest of William F. Taylor, at the time of his death, was only that of a trustee in these lands, and not as the owner of any portion of'them in his'own right. ”But still, in that capacity, he had power by his will to direct the sale of them by his executors,.'and info whose hands the proceeds should afterwards be .placed, to be held, of course, for the benefit of the true
 
 cestui que trusts.
 

 The clause in his will, bearing on the sale-, is, —-££ I do hereby order, will, and direct, that on the first day of January next after my decease, or as near that day as can conveniently be, that the whole of the property that I may die: seized and possessed of, or
 
 may be any wise belonging to
 
 me, be sold.”
 

 This undoubtedly meant to empower the executors to sell the land he held in trust, as well as that in fee, by including any property that may be “ any wise belonging to me.” But what interest was thus vested in the executors concerning it ? A mere naked power to sell ? or a power coupled with a trust ? or merely a power coupled with an interest ? These are necessary inquiries as to the question made in the case, that these lands have escheated to the State of Kentucky, and also are useful, if not necessary, towards settling the validity of the sale by Savage, and the place where, if liable at all, he can be made to account for the proceeds. To determine these inquiries, it will bp necessary to look further into the will.
 

 In that, after directing the payment of a few small legacies out of the proceeds of his property, he" proceeds, — “I do hereby order, givej grant, and devise all the remainder or residue of my estate which shall remain after paying the before-mentioned legacies to my dearly beloved brother, Samuel Taylor,” &c., and to my beloved sister, of the same place, share and share alike, provided they shall be both alive at the time of my decease and have issue, which issue, after-their respective deaths, shall share the. same equally,” &c. On this and the previous provision in the will, coupled with the facts which have been mentioned, we consider the law to be, that William F. Taylor, taking this property by a deed - which made it án express'trust in his hands for the heirs' of William Forbes,-held it as trustee for them till his death. He then-virtually devised the trust and the lands to the complainants, by directing that the lands be sold, and, after .discharging some special legacies, the proceeds bé paid over to the complainants, as his residuary legatees.
 
 *267
 
 The executors wer0 thus invested with a power to sell, coupled with a trust; and the residuary legatees thus became trustees to the hehs of William Forbes. To identify those heirs is somewhat difficult, but is very important to a true construction of the will. Probably, in 1810, they were his son Nathaniel, who, dying between that peripd and 1815 without, issue, his grandmother, Elizabeth Forbes, succeeded to him ; and, on her death about that time, the complainants, her. only' surviving children, succeeded to her. As all'these, except Nathaniel, were aliens, and he was in feeble health in 1ÍJ11, the paramount intention of the testator doubtless was to prevent an escheat of this and his own property. From considerations of affection, as well as duty, he must have desired to secure both that and his own estate free from escheat in the hands of those near relatives likely soon to be the heirs both of William Forbes and himself.
 

 Either of two constructions of his will would accomplish this object. The one we have just adopted, considering him as devising the proceeds of the lands, and hence their title, to his brother and sister, subject to a power in the executors, coupled with a trust, ■to sell them, and pay certain legacies ; or another, which would consider the power of the executors as one coupled with an interest, and vest die title at once in them for the purpose of selling the lands and discharging the small legacies and debts, if any, but holding the proceeds in trust to be paid over to his brother and sister, for the benefit of the . heirs of William Forbes, whomsoever they might then happen to be. See 2 P. Wms. 198; 8 Ves. 437; Lewin on Trusts, 234; Peter
 
 v.
 
 Beverly, 10 Peters, 533. One of these seems, also, to have been the construction put on the will by Samuel Savage himself, as he proceeded to visit Kentucky twice to discharge his trust in relation to these lands, and finally sold about a fourth of them as surviving executor, which he could not have done honestly, unless deeming himself possessed of more than the naked power which his executor in his answer now sets up. In order to survive to him, it must have been a power coupled either with a trust or an interest. See cases,
 
 post.
 
 To show that the executors, by such a devise, became possessed of a power coupled with a trust at least, reference may be had to the following cases beside those already cited. 1 Atk. 420, 469; 2 Johns. Ch. 254; Clay et al.
 
 v.
 
 Hart, 7 Dana, 1; Sugden on Powers, 95, 167; 3 Co. Litt. 113, note, 146, 181, a; 2 Story’s Eq. Jurisp. § 790; 5 Paige, 318; Zebach
 
 v.
 
 Smith, 3 Binney, 69. One of the tests on this subject is, that a naked power to sell may be exercised or not by the executors, and is discretionary; while an imperative direction to sell and dispose of the proceeds in a certain way, as in this case, is a power coupled with a trust. 7 Dana, 1; 10 Peters, 533; 12 Wend. 554; 2 Story’s Eq. Jurisp. § 1070; 10 Ves. 536.
 

 
 *268
 
 There are some conflicting cases on^this subject; but it is not necessary to review them again, it haying been so ably performed by Thompson, J. for this, court in Peters
 
 v.
 
 Beverly, 10 Peters, 565. There, as here, the executors were not expressly named as the persons, who were to sell the land, yet, say the court, “ it is a power vested in them by necessary implication.” See also 2. Sim. & Stu. 238; 2 Story’s Eq. Jurisp. § 1060 ; 1 Atk. 420; 15 Johns. 346; 4 Kent’s Com. 326; 2 Johns. Ch. 254; 4 Hill, 492. There, as here, it was also contended, that if they had the power to sell it was a naked one, and could not survive ; but the court say, if they had another duty, to perform under the will, with the proceeds, it was a power codipled with a trust or an interest, and survived. 10 Peters, 567; 15 Johns. 349. And the only difference is, that the subsequent duty to be performed, there was the payment of debts, and here it was to' pay over the money as legacies, and of course after the payment of any existing debts out of it.
 

 • If William F. Taylor, when making his will, supposed that he,, as trustee of this land, could direct the proceeds to be paid over to others than the heirs of William .or Nathaniel F., the devise 'would none the less show his intent to pass to the executors a power to sell coupled with á trust; and they would none the less take it coupled with
 
 a
 
 trust. Indeed, if it was necessary, in a case like this, to carry into effect the leading object of the testator in the will, to consider him as granting to the executors a power coupled with an interest, rathér than one coupled with a trust, it would not be difficult to sustain, such 'a construction in a court, of equity, as we have before intimated. Courts, in carrying out the wishes of testators, the pole-star in wills, are much inclined, especially in equity, to vest all the power or interest in executors which are necessary to effectuate those wishes, if the lánguage can fairly admit it. 4 Kent’s Com. 304, 319; 10 Peters, 535; Schauber
 
 v.
 
 Jackson, 2 Wend. 34; Bradstreet
 
 v.
 
 Clarke, 12 ibid. 663; Bloomer
 
 v.
 
 Waldron, 3 Hill, 365; Oates
 
 v.
 
 Cooke, 3 Burr. 1684; Jackson
 
 v.
 
 Martin, 18 Johns. 31; 1 Ves. sen. 485; Coster
 
 v.
 
 Lorillard, 14 Wendell, 299. They are inclined, also, when considering it a trust, or a power coupled with an interest, to have •its duration and quantity commensurate with the object to be accomplished. Shelly
 
 v.
 
 Edlin, 4 Adol. & Ell. 585; White
 
 v.
 
 Simpson, 5 East, 164; 1 Barn. & Cres. 342; 5 Taunt. 385. Though the distinctions between these different powers are not .always well preserved, ho doubt exists that a power coupled with an interest • may be inferred by obvious implication from the whole \yill, as the fee not being at once vested elsewhere, and it being necessary to have it in the executors to effect the general design (Jackson
 
 v.
 
 Schauber, 2 Wend. 1, 54, 55, overruling S. C., 7 Cowen, 193), as well as from the usual course, which is by an express devise to the executors, Bradstreet
 
 v.
 
 Clarke, 12 Wend.
 
 *269
 
 665, 667. Nor is it of any consequence how- small the interest be. Osgood
 
 v.
 
 Franklin, 2 Johns. Ch. 20; Bergen v. Bennett, 1 Caines’s Cas. in Err. 16; 2 P. Wms. 102. It is enough if only to distribute the proceeds as here, or to take the rents or use for, the. benefit of others. Same cases, and 14 Johns. 555; Zebach
 
 v.
 
 Smith, 3 Binney, 69. The interest, too, maybe equitable or legal. Hearle
 
 v.
 
 Greenbank, 3 Atk. 714; 2 Johns. Ch. 20. And it is-an interest not required to yield a profit or gain, but any title in the estate itself, the thing to be sold. Hunt
 
 v.
 
 Rousmanier, 8 Wheat. 174, 206. Being given by the will, when it is a power coupled with an interest, and the conveyance under it being by and through the will, it is of course for the use of the person designated in the will, as if it was a devise over to him. And if the whole scope and design of the will could not otherwise be accomplished, it -might not therefore be unjustifiable in a court of equity, in a case like this, to let the title vest in the executors first, for the purpose of being sold and turned into personal estate, for the alien legatees, in order to avoid the very escheat now set up by the respondent. Craig
 
 v.
 
 Leslie, 3 Wheat. 376, 377; 1 Ves. sen. 144, 485; 4 Kent’s Com. 304, 310, note; 14 Wend. 268 ‘ Indeed, a,court of equity, if jt should appear necessary, in order to avoid an escheat, and to enforce any apparent devise of.the testator when trustee, directing, land to be turned into money and to go to certain legatees, of
 
 cestui que trusts,
 
 will look to substance rather than form, will consider the act as done at once, which is directed to be -done, and the land as money, and thus to be passed to those entitled to it. Peter
 
 v.
 
 Beverly, 10 Peters, 533, 563; 3 Wheat. 563; 5 Paige, 318; Bogert
 
 v.
 
 Hertell, 4 Hill, 495; 2 Story’s Eq. Jurisp. § 790; Newland on Contr. 48 to 64, and authorities cited.
 

 But as the title here can be considered as passing to the complainants at once, leaving only a power, coupled’ with a trust, in the executors, and still accomplish the object of the testator in preventing an escheat, we are inclined to adopt that construction of the will as the safer one, amidst, several conflicting authorities and opinions in relation to this question. See some of them in 4 Kent’s Com. 321, note, 5th ed. In such cases, till the sale is made, the title usually vests in the heirs, if no other intent is manifest. Jackson
 
 v.
 
 Burr, 9 Johns. 105, 106; Denn
 
 v.
 
 Gaskin, Cowp. 661. But where it is given by devise, as here, and the devisees were not-, the
 
 cestui que trusts
 
 and heirs as tQ those lands when he died, it is proper' that the title, should be considered as passing by devise, and as being in the complainants by devise rather than descent. Jackson
 
 v.
 
 Schauber, 7 Cowen, 197; Cowp. 661; 8 Wheat. 206, 207; 2 Wend. 34; Coster
 
 v.
 
 Lorillard, 14 Wend. 326. And the more especially is it so, when, if the heirs took it as heirs, it might, escheat.
 

 The case of Jackson
 
 v.
 
 De Lancy, 13 Johns. 555, reviews most of the cases connected with this question, and comes to the con-
 
 *270
 
 elusion, substantially, that the title to the trust estate would pass in a case like this to the residuary legatees, and be held by them for the
 
 cestui que trusts.
 
 See the cases there cited, and among them Braybroke
 
 v.
 
 Inskip, 8 Ves. 417; 2 P. Wms. 198; Ex parte Sergison, 4 Ves. 147; 1 Merivale, 450; 5 Pick. 112. See also Dexter
 
 v.
 
 Stewart, 7 Johns. Ch. 55. The better opinion is, that a trust estate always passes in a general devise like this to the residuary legatees, if no circumstances appear to indicate a contrary intent. Braybroke
 
 v.
 
 Inskip, 8 Ves. 417, 436; 3 ibid. 348; 4 ibid. 147; 13 Johns. 537; Ballard et al.
 
 v.
 
 Carter, 5 Pick. 115; Marlow
 
 v.
 
 Smith, 2 P. Wms. 198, 201. Here, the circumstances fortify the idea, rather than impair it, that the trust estate was intended, in the end, to' pass to the residuary legatees, as they were then probably supposed to be the
 
 cestui que trusts,
 
 and in fact became so before the devise took' effect.
 

 Another reason is, that the devisees would, if not
 
 cestui que trusts,
 
 hold the estate for them, and be bound to account for it to them, so as tc make it safe. Marlow
 
 v.
 
 Smith, 2 P. Wms. 201.
 

 This view of the case disposes first of the point made, that these lands had, before the sale by Savage, escheated to the State of Kentucky. It was hence argued that they could not be sold by him, though no office had been- found, the respondent considering an escheat good without any office found. Montgomery
 
 v.
 
 Dorion, 7 N. Hamp. R. 480.; 6 Johns. Ch. 365. But that is correct only as to land cast by descentun an alien. 7 Cranch, 629. For, as to land taken by devise pr purchase, an alien can always hold it till office found. Knight
 
 v.
 
 Duplessis, 2 Ves. sen. 360; Co. Litt. 2, 6; Powell on Devises, 316; Hubbard
 
 v.
 
 Goodwin, 3 Leigh, 512; 3 Wheat. 589; Governeur’s Heirs
 
 v.
 
 Robertson, 11 ibid. 332, 355; Fairfax
 
 v.
 
 Hunter’s Lessee, 7 Cranch, 618.
 

 It will be seen, on a very brief- examination, that the idea of. a descent cast upon aliens of these lands, on the death of William F. Taylor or Nathaniel Forbes, cannot be sustained under the opinions we have just expressed. The aliens took them by devise, and not by descent, in either of the two constructions of the will which can be at all vindicated. As a general principle,, too, in all cases, a court of chancery, will not raise a use- “by implication,” in an alien, so as to'endanger the estate, but will rather pass a title to the executors in trust. 2 Wash. C. C. 447. So it has been held that, if it can- be avoided, a court.will not vest the estate in an alien by construction, in order tó. have it - escheat, when otherwise it would not. 3 Leigh, 513, and cases, cited.
 

 We are prepared next' to see whether Samuel Savage or his representatives are liable to - account for this property in Alabama, provided he is chargeable anywhere. Because, if not so liable in Alabama, this part of the case must fail for want of jurisdiction in the State in which the proceedings were instituted; and the further ■ questions as to his liability need not be examined.
 

 
 *271
 
 First, then, it happens, that though the heir's of.Nathaniel Forbes and Elizabeth are the same persons here as- the residuary legatees of William F. Taylor, yet they take an interest in the Kentucky lands and their proceeds, in a different right and for a different purpose from-what they do in the property of William F. Taylor held in his own right. It happens., too, that the interest they thus take is derived from the deed by Mary Forbes to William F. Taylor, and not through the will of the latter, except as directing the trust property to be sold by his executors and paid over to them. It is important to observe also, in this connection, that their taking of this property and the sale of it are neither of them by virtue of any letters testamentary issued in South Carolina ; that the property is not assets of William F. Taylor collected or to be accounted for there ; and as the sale made by Samuel Savage of a part of these lands was made in a different. State, and of property situated in a different State, and the proceeds of it never carried into South Carolina, and the sale made after he had removed therefrom and closed up his administration there, no reason exists for making him account in that State for the sale. See 1 Rich. S. C. Rep. 116; 2 Wend. 471; 6 Pick. 481; 3 Mon. 514; Story’s Conflict of Laws, § 523. So, not having, taken out letters tesfamentary in Kentucky, or even proved the will there, and residing elsewhere, he cpuld not be sued in that State. Fletcher’s Administrator
 
 v.
 
 Wier, 7 Dana, 348. It follows, then, that if liable at all for the proceeds, of the sale of this trust property, being not that owned by the testator in his own right, ánd the sale,made by virtue of a power in the will, and not of letters testamentary, he was liable in Alabama, the State where he had his 'domicile; the- State whither he carried the proceeds, —where the demaqd was made on him by the complainants, where George M. Savage, his executor, took out letters on his estate, and where alone George M. Savage could be proceeded against for any claim against hjs testator. Bryan et al.
 
 v.
 
 McGee, 2 Wash. C. C. 338; Trecothick
 
 v.
 
 Austin et al., 4 Mason, C. C. 29.
 

 Being liable, then, in Alabama, if at all, .for the acts done in respect to these lands, it is next .to be considered whether Samuel Savage or his representatives are responsible for tberii to the complainants at all, and if so, to what extent. When applied to in 1838, by Primrose, the attorney of the complainants, to pay over the .proceeds'of his sale, Savage admitted that in 1818 He executed releases of about one fourth of these lands', in which he acknowledged a consideration received by him of more than two thousand dollars ; that he professed to make the sale and.receive the consideration as surviving executor of William F. Taylor, and by virtue of a power in his will, and that he never had accounted for the proceeds since, but’ contended that the sum actually realized by him was much smaller than that named in the deeds, and objected to pay over any
 
 *272
 
 thing, though not assigning particularly his reasons for the refusal. But the counsel for the respondent now interpose various specific reasons against accounting for those proceeds beside that already disposed of, which questioned the jurisdiction over the mattér in Alabama. One of their objections is the want of interest in the corriplainants as legatees or
 
 cestui que trusts
 
 to recover. Another is the irregularity, and indeed illegality, of his sale. Another is the small amount received, not exceeding his expenses. And another, still, is the statute of limitations.
 

 But we have already shown that the-complainants, as residuary legatees, were entitled to the trust estate under the devise immediately, and, in any permissible view, as soon as it was converted into money, and woúld be bound to manage and account for it to the true
 
 cestui que trusts,
 
 if they were not so themselves. See before, 13 Johns. 555, and 8 Ves. 417, 436, and other cases. Being now-, however,
 
 cestui que trusts
 
 themselves, as well as devisees, their interest in the proceeds of the sale' is beyond controversy, there having been, as already shown, no previous escheat of the lands.
 

 In respect to the informality and illegality of the sale., they are insisted on from its not appearing that all the executors except Savage were then dead, from his not recording, the will in Kentucky, and from the verbal denial at first of the validity of his sale by Primrose. But it is to be remembered that this is a bill in equity, that the executors had a power under the will to sell this property, which was a power coupled with a trust. That is not a title to be made out at law under a special statute, where much strictness is required. 6 Mass. R. 40; 14 ibid. 286.
 

 Nor is it only a naked power, not coupled with any trust or interest, where much strictness is also requisite. Williams et al. v. Peyton’s Lessee, 4 Wheat. 79; 10 Peters, 161, and other cases cited. But it is merely a case to show such a sale as may make, in a court of equity, an agent or trustee liable to those for whom he acts. Minuse
 
 v.
 
 Cox, 5 Johns. Ch. 441, and Rodriguez v. Hefferman, ibid. 429.
 

 Now it appears that Savage, in his deeds of this land, averred himself to be surviving executor of Taylor’s will. And the case discloses the death of two of them, but says nothing of the other, except, ir 1824 and 1825, he is referred to as dead “some time ago.” Considering him also as then dead,-which is the probable inference from these facts, the right of Savage alone to sell under the will would be good. A power to sell, not merely a naked one, but coupled either with an interest or a trust, survives to the surviving executor. Peter
 
 v.
 
 Beverly, 10 Peters, 533; Co. Litt. 113
 
 a,
 
 181
 
 b
 
 ; Lewin on Trusts, 266; Sugden on Powers, 165, 166; 2 Johns. Ch. R. 1; 7 Dana, 1 ; 5 Paige, 46; 2 Story’s Eq. Jurisp. § 1062; 10 Johns. 562; 8 Wheat. 203; Jackson
 
 v.
 
 Eerris, 15 Johns. 346. Several of the States have positive statutes regulating this matter, and usually in this way..
 

 
 *273
 
 Again, if all of several trustees decline- the trusf except one, the estate vests in him, and he .is authorized to sell alone. 3 Paige, 420; 4 Kent’s Com. 326, note; King
 
 v.
 
 Donelly et al., 5 Paige, 46; In re Van Schoonhoven, 560; Cro. Eliz. 80; 7 Dana; 1; Zebach
 
 v.
 
 Smith, 3 Binney, 69.
 

 . All the executors in this case,' except Savage, declined to have any concern with these lands, and do not appear ever to have done any thing concerning them. It is obvious, likewise, on principle, •that where a sale is made under a will, which is merely the evidence of authority or power to do it, the omission to record it will not vitiate the sale, unless recording is in such case required by a local statute. If so required, the statute must of course govern. 9 Wheat. 565; 10 Wheat. 202. Probably the necessity for this must depend entirely on the local laws applicable to the transaction, — the
 
 lex rei sita
 
 (2 Hanm. 124; Kerr
 
 v.
 
 Moon, 9 Wheat. 570; 7 Cranch, 115), — and not on any general principles of international law applicable to immovable property. If not necessary by those laws, die omission.to do it would not be taken advantage of by any .one in any case ; and if necessary, it would not seem very equitable to let the executor take advantage of it, who himself had been guilty of the omission.
 

 But however this should be decided, looking to the laws of Kentucky, and how far it may be cured by the subsequent proof and recording of the will by Primrose for the-complainants (11 Peters, 211), and whether it is necessary to take out letters testamentary in Kentucky to make such a sale (Lewis
 
 v.
 
 MacFarland, 9 Cranch, 151), we need not give any decisive opinion ; since this branch of the inquiry, as to the liability of Savage, can be disposed of under a different aspect of the case.
 

 If the land was sold informally by Savage, still it was ‘sold in fact; it was conveyed in the character of surviving executor ; the authority for doing it was claimed under the willdie money for it was received in this way ; the lands were occupied quietly under his deed for near twenty years ; the consideration was never paid back to the grantees, nor by law liable to be, as his deed was without warranty except against those claiming under W. F. Taylor, and, as regards them, was in the end expressly confirmed by his heirs and devisees under the compromise before detailed.
 

 . It is true, that their agent at first denied the legality of the sale by Savage, but from its having actually taken place, money been received under it, and the lands occupied in conformity to it so long, he was in the end obliged to compromise and confirm it for much less than the real value of the lands, and expressly reserved the right to resort to Savage for the amount he hád received.
 

 On a consideration of these facts, can there be a doubt that it is equitable to make Samuel .Savage and his representatives pay over to the
 
 cestui que trusts
 
 the money he thus received on their account ?
 
 *274
 
 Can they be allowed to set up his own imperfect doings or neglect as a justification for not paying over what he actually received for them, and still holds ? Is he not estopped in equity to deny his liability to the complainants ? Have they not suffered in their interests to this extent by his conduct ? Have not he and his estate profited to this extent by his sale of their property ? These questions can be answered only in one way, and the replies must give a stamp and character to the whole transaction in a court, of conscience unfavorable to Savage. Consequently, in this bill in equity between the parties as to a trust, we think it manifestly just that the complainants, as against Savage’s estate, are entitled to this money ; at least, to the amount adjudged in the court below. 1 Johns. Ch. R. 620; 1 Paige’s Ch. R. 147, 151; 6 Paige, 355; 2 Johns. Ch. R. 1; 7 ibid. 122. Simple interest in such cases seems proper, and was allowed. 4 Ves. 101; 5 ibid. 794; 16 ibid. 410. As an analogy for estopping Savage to deny what he has said in his own deed, see Speake et al.
 
 v.
 
 The United States, 9 Cranch, 28, and cases in Com. Dig.
 
 Estoppel, a,
 
 2. So, “ it is a settled principle of equity, that when a person undertakes to act as an agent foy another, hé cannot be permitted to deal in the matter of that agency upon his own account and for his own benefit.” Sweet
 
 v.
 
 Jacocks, 6 Paige, 365.
 

 So,
 
 “
 
 every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law, for money had and received, or in equity, as a trustee, for a breach of trust.” Kane
 
 v.
 
 Bloodgood, 7 Johns. Ch. 110; Scott
 
 v.
 
 Surman, Willes, 404; Shakeshaft’s case, 3 Bro. Ch. Cas. 198.
 

 He is liable, then, first, on the ground that the
 
 cestui que trusts
 
 might confirm the sale and resort to th’e proceeds, as they finally did in this case. Story’s Eq. Jurisp. § 1262; 2 Johns. Ch. 442; 1 ibid. 581. It is true that such a confirmation must be full and distinct; whereas here a disavowal of it was at first made by their agent, and when it was in the end agreed to-be ratified, the act was done'on the receipt of additional money.
 

 This, however, would not seem to.vitiate it. under.the reserva-, tion made of a right to proceed against Savage for what he had received. The complainants, then, fully confirmed Savage’s acts as a sale, just as much as if no further money had been paid. • Thpugh they-asked for this additional sum, this was. no injury to Savage, and should constitute no objection to his paying over to them what his vendees agreed he should, and what he virtually promised to. do, when taking the .money for their property.
 

 But if this view of the-matter was'at all doubtful, another .ground exists on which he might, be made liable to a like extent, and on which the complainants seek to charge him for a much larger amount. . The sale by Savage, if not valid and not confirmed, was
 
 *275
 
 still injurious to the complainants. It gave such a color of title to the tenants, as to prevent the complainants from obtaining any thing more for. their lands, but by way of compromise, and then a price in all, including what was paid to Savage, far less than their true value.
 

 A trustee is liable for misconduct or breach of trust or negligence, as well as for money actually received. Jacobs’s R. 120. And if .in. these ways he injures the
 
 cestui que trust,
 
 he is liable, whether he himself gains by his misbehaviour or not. Lewin on Trusts, 634; 3 Bro. Ch. Cas. 198. But when we come to inquire, as the complainants insist, whether Savage was not liable for a much larger sum on this- ground than what was allowed in the court below, we are met by several difficulties. The amount, beyond the money received and interest thereon, rests on estimates somewhat conjectural after so-long a lapse of time ; and the neglect itself is not so easily fixed with much certainty, from a like cause, and the death of .parties preventing explanations, and an extraordinary omission for “almost a whole generation by the complainants themselves to bring this business to a close. . Savage, also, may have proceeded no further in subsequent years to sell the rest of the lands, and take, charge of the judgments which had been recovered, because discovering that Samuel and Mary -Taylor, the heirs, had appointed Hutchinson and Bennock special agents instead of himself to manage the Kentucky property. The degree of neglect to be made out for any sum beyond that actually received is also different'and greater i When the trustee is made liable for more, it must be, in the language -of the books, “ in cases of very supine negligence or wilfol default.” 14 Johns. 527; ibid. 634; Pybus v. Smith, 1 Ves. jr. 193; Palmer
 
 v.
 
 Jones, 1 Vern. 144; Osgood
 
 v.
 
 Franklin, 2 Johns. Ch. 27; 3 Bro. Ch. R. 340; 1 Madd. 290; Caffrey v. Darby, 6 Ves. 497. It would hardly be justifiable to find the existence of either of those after such a length of time, obscuring, so much by its mists and obliterating so much by death.
 

 Damages,, likewise, for mere neglect would stand in a different attitude as to the statute of limitations from what we shall soon see it does as to money held in trust ; and if the claim was on account of a breach of trust committed and perfected when the neglect first occurred,' it would be difficult to overcome the bar occasioned by-nineteen or twenty years since.
 

 As to the remaining objection, under tips head, that the sum received did not exceed Savage’s expenses, this is not in the first answer, and comes from an executor who could not possess full means of knowing the facts, and is not entitled to so much weight as if it had- been put in and sworn to by Samuel Savage himself. Carpenter v. The Providence Insurance Company, 4 How. 185, and cases cited there.
 

 Besides this, there is no evidence to support the denial. It is.
 
 *276
 
 not accompanied with any exhibit of expenses ; and no account for them seems to have been offered iñ evidence in the court below. To overcome this denial stands the admission in the first answer of receipts, to the extent of three or four hundred dollars, and no set-off claimed ; next, the acknowledgment to Primrose of something received ; next, the recorded confession in the deed'that $2,118 was paid to hirn ; and, finally, the testimony of several witnesses to actual payments, and the solvency of all the purchasers. But if any doubt existed as to this amount-being the proper, one, with interest, it would be removed by the proceedings in the District Court, where the account was stated -in this manner after an examination by agreement before the judge, and with liberty to except to the account, and no exception taken.
 

 The last objection to the recovery of the amount actually received, with interest thereon, is the.statute of limitations. As before intimated, this statute, in respect to money taken in express trust, rests on principles very different from what it might as to damages claimed for a mere neglect of duty, which happened, if at all, near twenty years before any demand or suit. Let it be remembered, that, though this money' was received by Savage, as trustee of the plaintiffs, in 1818, yet he never was requested to pay it over till. 1837, and that then he first became in default for not accounting for it. Till then he lived remote from the complainants, they being residents in a foreign country, and was not obliged to settle for theiy money in South Carolina as assets belonging, to William F. Taylor, in his own right, as has before been shown.
 

 Retaining it, under all the circumstances, till called on by the complainants or their agent, is therefore by no means decisive evidence of any neglect or intention not to account for it, till the demand made by-Primrose, in A. D- 1837. Consequently, the statute in relation to this would not begin to run till'then, and hence could have created'no bar in September, 1838, when this bill in equity was filed. 1 Jac. & Walk. 87; Attorney-General
 
 v.
 
 Mayor of Exeter, Jac. 448; 10 Peters, 177; Michoud
 
 v.
 
 Girod, 4 How. 503; Zeller’s Lessee
 
 v.
 
 Eckert et al., ibid. 289; 3 Johns. Ch. 190, 216; Kane
 
 v
 
 . Bloodgood, 7 Johns. Ch. 90; Gist et al.
 
 v.
 
 Cattell, 2 Desauss. 55. The case of Trecothick
 
 v.
 
 Austin, 4 Mason, C. C. 29, was in this, and SGme other respects, such as to involve and settle principles similar to what have been laid down in this opinion.
 

 ■ The question of fraud and concealment has also been-raised at the bar,’ not only-to aid.in charging the respondent, but in obviating the operation of the statute of limitations, as it would if existing. 3 Atk. 130; Hardw. 184; 7 Johns. Ch. 122; 20 Johns. 576; 6 Wheat. 181. But as it is not riecessary to decide on these,- we waive an opinion as to imputations, so difficult to settle correctly after the death of most of the parties and the lapse of a quarter of a century.
 

 There are some exceptions as to the form of the-claim and of the bill, that deserve a moment’s notice before closing.
 

 
 *277
 
 Though the plaintiffs make their claim in both cases against Savage, and would be entitled in the end, in one. as legatees, if at all, and in the other as
 
 cestui que trusts
 
 rather than legatees ; yet the views' already expressed would allow them to recover in both cases as residuary legatees, because the trust' passes properly to them under the devise, though accompanied by an obligation to account for the property to the
 
 cestui que trusts,
 
 if they should happen to be persons other than themselves.
 

 The description of the complainants, and of their rights, then, in the bill, is not exceptionable ; but the description of the liability of Samuel Savage, which is also .objected to, is not so free from imperfection. He acted under William F. Taylor’s will in a. fiduciary capacity in two respects not exactly the same, but not discriminated from each other in the bill. One was, to sell the lands his testator held in Kentucky in trust, and the other, to sell the lands and the other property, held in his own right, in South Carolina. Notwithstanding this, the variance does not seem to us to be such as, in this stage of the cause, and in a court of equity, imperatively to require an amendment.
 

 The claim in both respects is for the acts of . Samuel Savage alone, and is to, be recovered from his executor alone, and belongs to the complainants alone. The material facts are alleged, upon which it rests in both respects ; and hence, as no objection was taken to this in the answer or other pleadings, it may be regarded as cured now, and more especially in a proceeding in chancery, and' where there is enough alleged to indicate with distinctness.the subject-matter in dispute between the parties. See 32d section of Act of Sept. 24, 1789 (1 Statutes at Large, 91); Garland v. Davis, 4 How. 131.
 

 It will be seen, that by the course of reasoning we have adopted, and by the points on which our opinions hav 3 been formed, it has become unnecessary to decide some other questions presented in this cause in the able arguments of the counsel on both sides. ^ But having decided enough to .dispose of the case, and being satisfied that the judgment of the court below was right, however we differ as to some of the reasons assigned in its support, we do not propose to go further into the questions raised, and direct, that in this case the judgment below be affirmed. The other appeal, relating, to this matter and argued with it, must consequently be dismissed.
 

 Order.
 

 Vincent M. Benham, administrator
 
 de bonis non,
 
 with the will annexed, of Samuel Savage, deceased, Appellant,
 
 v.
 
 William Taylor, George Taylor, William Primrose, and Eliza, his wife, George Porter, and Elspet, his wife, William Rainey, Alexander Rainey, and Elizabeth Rainey.
 

 This cause came on to be heard on the, transcript of the record
 
 *278
 
 from the District Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said District Court in this cause be and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.
 

 William Taylor, George Taylor, William Primrose, and Eliza, his wife, George Porter, and Elspet, his wife, William Rainey, Alexander Rainey, and Elizabeth Rainey, appellants,
 
 v.
 
 Vincent M. Benham, administrator
 
 de bonis non,
 
 with the will annexed, of Samuel Savage, deceased.
 

 This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof, this court having affirmed the decree of the said. District Court in this cause, on the appeal of the respondents at the present term, it is now here ordered and decreed by this court, that this appeal of the complainants be and the same is hereby dismissed with costs.