## CHEW and others *v.* HYMAN and others.

*(Circuit Court, N. D. Illinois.  April 21, 1881.)*

1. TRUST DEED—FORECLOSURE—PARTIES.

    Devisees, holding the fee in an equity of redemption, are necessary parties to a suit to foreclose a trust deed by a judicial sale of the land under the decree of a court of equity.

2. DONEE OF POWER—FEE.

    A power to sell in his own discretion, and re-invest, during the minority of devisees, does not vest an executor with the fee of the land.

3. TRUST DEED—JUDICIAL SALE.

    A sale under a decree of court is judicial, when such sale is not made exclusively under the powers of a trust deed.

4. SAME—FORECLOSURE SALE—RATIFICATION.

    An executor, empowered to sell for the purpose of re-investment, cannot bind devisees holding the fee in an equity of redemption, by the ratification of a foreclosure sale to which they were not parties. —[ED.

In Equity.  Bill to Redeem.

BLODGETT, D. J.  By this bill the complainants seek to redeem the lands in question from a trust deed given as security for the payment of money.  The material facts, as they appear in the record, are that, on and before the sixteenth of February, 1859, one William F. Johnston was seized in fee of the undivided half of section 21, town 39 north, range 13 east, situate in Cook county, in this state, and on that day made a deed of the premises in fee to John V. Lemoyne, in trust, to secure the payment of the bond of Johnston to Susan C. Williams, for $4,500, with power to the trustee, in case of default in the payment of the indebtness, to sell said premises at public vendue, after giving

thirty days' notice of the time and place of such sale, in the manner specifically provided in said deed, and out of the proceeds to pay said indebtedness and the cost of sale. On the twentieth of June, 1859, after the making and recording of said trust deed, Johnston sold and conveyed the premises to John A. Washington, subject to the trust deed, and by the terms of the conveyance Washington assumed and agreed to pay the indebtedness secured by said trust deed.

On the thirteenth day of September, 1861, John A. Washington died intestate, leaving, as surviving heirs, his children, Louisa F., Jane E., Eliza S., Anna M., Lawrence, Eleanor, and George, who, with the husbands of the married daughters, are the complainants in this case. By his last will and testament, bearing date on the fifteenth of August, 1861, John A. Washington, after bequeathing to his son Lawrence certain family heir-looms, mementos, books, and manuscripts, disposed of the residue of his property in the following terms: "(3) I give all of the property of which I may die possessed, other than that just mentioned, to be equally divided among my children as they respectively become 21 years old, and until then to be maintained and educated out of the proceeds arising from it. (4) I constitute and appoint my brother Richard B. Washington, and my friends William Fontaine Alexander and Edward C. Turner, executors of this my last will and testament, and I hereby empower them, or the survivors or survivor of them, to sell any property of which I may die possessed, and which is beyond the limits of Virginia, in such manner and on such terms and for such price as to them or him shall seem best for the interest of my children, and to re-invest the proceeds arising from such sale in such other property as they may think best for my children." The will was duly probated in Farquier county, Virginia, in November, 1861, and letters testamentary issued to Richard B. Washington as sole executor; Alexander having died and Turner having renounced all rights as executor under the will.

In December, 1861, Richard B. Washington, as executor of John A. Washington, gave to George H. Hughes two contracts in writing, by the terms of one of which Hughes was to con-

duct a suit then pending in the supreme court of the United States, in which said John A. Washington was appellant, and Mahlon D. Ogden was appellee, to a determination thereof, and to pay all costs and charges necessary to conduct said suit; and said executor agreed to pay Hughes, as compensation for his services rendered and to be rendered by him in the said suit, one-third of the proceeds of the sale of the real estate of John A. Washington lying in Cook county, Illinois, after payment of the encumbrance then on said land, or to give Hughes, in lieu of said proportion of proceeds, one-third part of said real estate which might remain after payment of the encumbrances,—Hughes to pay all the expenses of employing counsel and conducting said suit; and in case of a determination thereof in favor of Ogden, he was to receive no compensation for his services rendered or to be rendered. By the terms of the other of these contracts, Hughes was to take charge of the half section now in controversy, and one other tract, and to sell so much thereof as was necessary to pay the encumbrances thereon, and advance the money required to pay the encumbrances and taxes, and was to receive for his services one-fourth of the proceeds after paying the encumbrances and expenses. The proof also shows that in the spring of 1862 the executor gave to Hughes a power of attorney to bring and defend any suits concerning the estate of John A. Washington in Cook county; also to negotiate and make sales of said property, or any part thereof, and apply the proceeds to the payment of any encumbrances or any other debts in Illinois, and to such other objects and ends as Hughes might deem best.

On the twelfth day of March, 1864, Susan C. Williams, the payee and holder of the bond secured by the deed of trust from Johnson to Lemoyne, filed upon the chancery side of this court her bill, setting out in substance that said bond had, by its terms, become due and payable on the sixteenth of February, 1864, and that the same remained wholly unpaid; that said John A. Washington had assumed the payment of said indebtedness, and had died, and that Richard B. Washington was his executor; that Mr. Lemoyne, as trustee, was

unwilling to execute the trust without an order of court, and prayed that an accounting might be had of the amount due on the bond; and that Lemoyne, as trustee, be directed by the court to sell said premises in pursuance of the powers contained in the trust deed, and, out of the proceeds of the premises, to pay the complainant Mrs. Williams the amount found due her, and to bring the residue into court for the benefit of the parties entitled thereto. The only defendants to said bill were Richard B. Washington, the executor, and Mr. Lemoyne, the trustee. On the same day that the bill was filed, Mr. Lemoyne, the trustee, entered his appearance and filed his answer; and on the same day the appearance of Richard B. Washington was entered in said cause by Hughes as his attorney in fact, service of process waived, and his answer filed admitting the substantial allegations of the bill; and a decree was entered on the same day finding that there was due Mrs. Williams the sum of $4,500 principal and $262 for interest on the bond secured by the trust deed, declaring the same a lien on said premises, and directing said premises to be sold to pay said indebtedness, and that Lemoyne should proceed to execute the power vested in him as such trustee, and make sale of said premises without benefit of redemption.

The decree also found that it was necessary to sell the whole of said premises, the interest being an undivided one; that he should sell the same at public vendue, after first giving 30 days' notice in the Chicago *Post*, a newswaper then published·in the city of Chicago, and make and deliver to the purchaser or purchasers a good and sufficient deed or deeds of conveyance in fee simple, and that he should pay to Mrs. Williams the sum of $4,762, with interest at 6 per cent. from the date of the decree, and pay the balance of the proceeds into court, to be drawn out by Richard B. Washington, as executor of John A. Washington, and to make report to the court of his doings in that behalf for the approval of the court. In pursuance of this decree, Mr. Lemoyne, on the twenty-sixth day of April, 1864, offered the premises at public vendue, and the same was struck off and sold to the de-

fendant Robert W. Hyman for the sum of $9,700, and the trustee made and delivered to the defendant Hyman a deed of all the right, title, and interest, both at law and in equity, which said trustee had acquired in the said premises by said trust deed, and thereupon duly reported his proceedings under said decree to the court, and paid into court the sum of $4,300, being the balance left after paying the amount due Mrs. Williams and the cost of said proceedings.

It further appears that after the consummation of said sale the money so paid into court was withdrawn by Hughes, as agent and attorney of Richard B. Washington, and all, except enough to make, with the amount paid Mrs. Williams and the costs, $6,000, was refunded to the defendant Hyman by Hughes, and thereupon defendant Hyman made two notes of $4,500 each, payable to Richard B. Washington, executor, with interest at 6 per cent.,—one on the twenty-sixth of April, 1865, and the other on the twenty-sixth of October, 1865,—and secured payment of the same by a trust deed on said premises.

In May, 1865, Hughes and Richard B. Washington met in Baltimore, Maryland, and Hughes rendered an account of the proceeds of said land, and turned over to the executor the last note of Hyman for $4,500, and the same was subsequently fully paid to the executor. None of the present complainants—children of John A. Washington—were made parties to this suit by Mrs. Williams, and the testimony shows that none of these children were aware of this suit, or that the land in question had been sold under the decree of this court, until a short time before the suit was brought. There is good ground, I think, for concluding from the evidence in the record that this Williams suit, and the proceedings under the decree of the court made therein, was a mere expedient resorted to by Hughes to vest the title to the land in the defendant Hyman. It appears that Hughes, in February, 1864, wrote to Richard B. Washington, executor, that he had sold this land for $15,000, and forwarded him a deed to execute in pursuance of such sale. But the executor did not execute and return the deed, and this circumstance, taken in

connection with the dispatch and facility with which the decree was obtained in the court, and the fact that Hughes then had in his control ample means with which to pay off the Williams debt, certainly tends cogently to prove that the proceedings in court were purely friendly, and preconcerted for the purpose of effecting under their color the sale made by Hughes to Hyman, which the executor had refused to ratify by executing and returning the deed; but as I do not rest my conclusions as to the merits of the case on this feature of the proof, I will not enlarge upon it. There is no proof in the record showing, or tending to show, that the sum of $15,000 paid by defendant Hyman for the premises was not, at the time he purchased, a fair price, and all that the property was worth.

Upon these facts complainants claim the right to redeem, on the ground that the sale under which Hyman claims title was made in pursuance of the decree made in the case of Mrs. Williams against Richard B. Washington and Lemoyne, and that they were not parties to said suit, and are not bound by the decree made therein or the sale made in pursuance thereof; that said sale was in all essential respects a judicial sale, and the foreclosure of said trust deed was in effect under said decree, and not solely under the contract powers conferred on Mr. Lemoyne by the trust deed;—while on the part of the defendants it is insisted that the complainants were not necessary parties to the bill; that their interests were represented by the executor; and further, that the executor was clothed with such powers of sale under the will as to draw to him the fee of the land upon which his power was to operate. The first question to be considered is, who had the fee in the equity of redemption of this land at the time of the suit in question? The third clause of the will of John A. Washington expressly devises this land, with his other real estate, to his children, and I think there is no room for doubt, and hardly for argument, that these complainants held the fee in the equity of redemption. The Williams bill was filed for the purpose of having an account taken as to the amount due Mrs. Williams and

secured by the trust deed, and to require the trustee to execute the trusts and make the amount thus to be found due. The frame and scope of the bill were such that the court could appropriately have appointed a new trustee, or directed a sale by one of its own officers, a master in chancery or commissioner, in the usual form of chancery sales. The court was not necessarily bound to execute the trusts through the trustee named in the deed, if for any reason it should be held more agreeable to equity, and conducive to the rights of all the parties, that they should be executed otherwise. It is not what the court did do, nor the decree which was actually entered, but what the court might have done under this bill, which determines the question as to who were the proper parties thereto.

The decree which was entered required the trustee to make the sale in a particular way, even directing the newspaper in which he should publish his notice and the number of days which such notice should be published, and finally requires him to report the sale to the court, and to pay out of the proceeds of the sale the amount due Mrs. Williams, with interest at 6 per cent. after the date of the decree, and pay the balance of the proceeds into court, to be drawn out by Richard B. Washington as executor. Here, it will be seen, are several duties imposed on the trustee, Mr. Lemoyne, which did not arise under the first deed: *First.* He was to advertise in a particular newspaper, when the trust deed designated no special newspaper for the purpose. *Second.* He was to pay Mrs. Williams, the complainant, not the principal sum due on her bond and interest at 10 per cent., as the deed required, but the amount found due by the decree and 6 per cent. from the entry of the decree, thus compounding the interest for such time as should intervene between the decree and sale. *Third.* He was to bring the surplus proceeds of the sale into court, instead of paying it over himself directly to Johnson, the grantor in the trust deed, or his assigns. He was to pay it into court, to be drawn out by Richard B. Washington, executor, etc., thus judicially determining who was entitled to this surplus. *Fourth.* The decree directed the

trustee to sell the whole premises, because the interest was an undivided one. This is only material so far as it shows that in this decree, which, we must presume, was prepared by the consent of all the parties before the court, the sale was treated as a judicial sale by the court and parties, and not as a sale made exclusively under the powers of the trust deed, further than the court saw fit to adopt those powers and terms.

In this respect the case comes clearly within the case of *Swift* v. *Smith*, decided by the supreme court of the United States at the present term, which expressly holds that the sale was a judicial sale, although conducted and made by the master in chancery of the court, who was appointed a trustee by the decree; yet, at the same time, it was to be made according to the terms contained in the trust deed. If this was a judicial sale, I hardly need cite authorities to show that the owners of the fee, burdened with the indebtedness which the complainant sought to make out of this real estate, were necessary parties to the suit. But it is urged that equity rule 49 dispenses with the necessity of making these devisees parties to the record. This rule reads as follows: "In all suits concerning real estate, which is vested in trustees by devise, and such trustees are competent to sell and give discharges for the proceeds of the sale, and for the rents and profits of the estate, such trustees shall represent the persons beneficially interested in the estate, or the proceeds or the rents and profits, in the same manner and to the same extent as the executor or administrators in suits concerning personal estate represent the persons beneficially interested in such personal estate; and in such cases it shall not be necessary to make the persons beneficially interested in such real estate, or rents and profits, parties to the suit, but the court may, upon consideration of the matter upon the hearing, if it shall so think fit, order such persons to be made parties."

The question, then, in this case is, was the fee of this land vested in the executor, so as to make this rule applicable? The will certainly does not vest it in the executor by its

terms, and therefore it seems to me the rule does not apply. The power with which the executor is clothed by the will is purely discretionary. The executor could not be compelled to act. He was clothed simply with the discretionary right to sell the real estate outside of the state of Virginia and re-invest the proceeds. Until the executor exercised this discretion to sell for the purpose of re-investment, the fee of this land remains in the children, the devisees under the will, and there is no clause or word in the will intimating that the testator intended that the executor should take the fee. When the executor saw fit to sell for the purpose of re-investment under the powers with which he was clothed, that passed the fee out of the children, as in the case of a power given any agent to sell real estate under a letter of attorney from his principal. "Mere powers are purely discretionary with the donee: he may or may not exercise or execute them at his sole will and pleasure, and no court can compel or control his discretion, or exercise it in his stead or place, if for any reason he leaves the power unexecuted. It is different with powers coupled with a trust, or which imply a trust." Perry on Trusts, § 248. So in *Taylor* v. *Benham*, 5 How. 269, the supreme court of the United States says: "One of the tests on this subject is that a naked power to sell may be exercised or not by executors, and is discretionary, while an imperative direction to sell and dispose of the proceeds, as in this case, is a power coupled with a trust." So in Story's Eq. Jur. § 1070, the rule is stated in these terms: "In the nature of things there is a wide distinction between a power and a trust. In the former, the party may or may not act in his discretion; in the latter, a trust will be executed notwithstanding his omission to act."

But it is urged further that this sale has been ratified by the executor, by the receipt from Hughes of the proceeds of the sale made to Hyman. The answer to this seems to me to be—*First*, the executor received this money from Hughes under the false statement that the property had been sold at a forced sale under foreclosure proceedings, when in fact it was a mere colorable sale, consented to and managed by

Hughes as the agent of Washington, and where there was no compulsion about it—a sale made simply by arrangement; *second*, the executor, being only empowered to sell for the purpose of re-investment, he could not ratify a sale not made by himself under the powers, so as to bind the devisees under the will, if they were necessary parties to the suit. The fact that the executor received the remnant of the proceeds of the property left after the sale made in pursuance of the decree of the court in that case, cannot, it seems to me, be held to ratify a sale which he had no agency in making, and which he did not pretend to make, under the powers with which he was clothed.

It is further suggested that there has been undue delay in the bringing of this suit, but the proof shows that all these complainants were minors at the time these proceedings were had; that they did not learn of the fact that the property had been sold, or in any way disposed of, until 1871, at which time those who were then of the age of 21 years were married women, and continued such until this suit was brought. There does not seem to me, therefore, to have been any such delay in the bringing of this suit as makes this proceeding what might be called a stale proceeding, within the meaning of the equity cases. It does not come within any of the limitation laws of the state of Illinois, and it seems to me it is not such a claim as should be considered stale. The other defendants in this case, Barling, Davis, and Mandel, claim a title under Hyman, and have no better standing in court than he.

Under all the facts in this case, therefore, and under the law as I think it should be applied to these facts, these complainants will be entitled to a decree allowing them to redeem these premises upon such terms as are equitable under all the facts in the case; and those terms will be—*First*, that they shall pay the amount due on the Williams trust deed, with the interest from the time it fell due, at the rate called for by the bond; in other words, Hyman should be subrogated to the position of Mrs. Williams. He should also receive 6 per cent. upon the balance of the money which

he has paid, from the time he paid it, including the amount paid by him for taxes and assessments, and for permanent improvements upon the premises; Hyman accounting for all rents and profits received by him from the land, which should be deducted from the amount so found due him.