THOMPSON v. EMMETT IRR. DIST. et al.

(Circuit Court of Appeals, Ninth Circuit. August 9, 1915.)

No. 2479.

1. APPEAL AND ERROR ⬤➡927—QUESTIONS OF FACT—APPEAL FROM ORDER OF NONSUIT.

On an appeal from an order of nonsuit, the allegations of the complainant's bill must be taken as true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. ⬤➡927.]

2. QUIETING TITLE ⬤➡34—IRRIGATION BONDS—COMPLAINT—CAUSE OF ACTION.

A bill by the purchaser of bonds issued by an irrigation district in Idaho, for a valuable consideration and after judicial determination of the regularity of its organization and authority, alleging that interest coupons had not been paid; that the directors of the district had levied and collected assessments on the lands therein for the payment of such in-

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

terest and defaulted in interest on the ground that part of the bonds had been sold without consideration or adequate consideration, without designating such bonds by number or otherwise—stated a case for the removal of a cloud upon the title to personal property.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 69, 71, 72, 76, 77; Dec. Dig. ☞34.]

3. COURTS ☞262—UNITED STATES COURTS—JURISDICTION—EQUITY.

Under Judicial Code, § 57 (Act March 3, 1911, c. 231, 36 Stat. 1102 [Comp. St. 1913, § 1039]), providing for the appearance and answer of absent defendants in suits to remove cloud on title to real or personal property, a federal court of equity has jurisdiction of a suit by the holder of irrigation bonds to remove a cloud on the title thereof before the time at which any judgment might be obtained determining their validity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ☞262.]

4. QUIETING TITLE ☞30—BILL—PARTIES.

A holder for value of the bonds of an irrigation district may bring a suit for himself and all other holders choosing to join therein to remove a cloud upon his title to the bonds.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 64-66; Dec. Dig. ☞30.]

5. WATERS AND WATER COURSES ☞230—IRRIGATION DISTRICTS—BONDS—OFFICERS AS TRUSTEES.

The officers of an irrigation district stood in the relation of trustees for the holders of the district's bonds, and the moneys collected by them from the taxpayers for the payment of interest on the bonds was a trust fund, and their diversion thereof, by not applying it to payment of the interest, made them liable for breach of trust.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 319; Dec. Dig. ☞230.]

6. COURTS ☞262—UNITED STATES COURTS—EQUITABLE JURISDICTION—ENFORCEMENT OF TRUST—STATUTE.

The District Court had jurisdiction of an amended bill in equity by the holder of bonds issued by a regularly organized state irrigation district, alleging that the directors of the district had made and collected assessments for the payment of interest on the bonds, but had defaulted in interest, and had cast a cloud on the title to the bonds by claiming that part of them had been issued without consideration or without adequate consideration, on the ground of its independent equitable jurisdiction over trustees.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ☞262.]

7. EQUITY ☞47—ADEQUATE REMEDY AT LAW—STATUTES.

In such case the District Court, though required by Judicial Code, § 267 (Comp. St. 1913, § 1244), to deny relief in equity in any case where adequate and complete remedy may be had at law, might take jurisdiction on the ground that the only available action at law to recover the interest due on the bonds as they became due did not afford a practical and efficient result.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 153-155; Dec. Dig. ☞47.]

8. WATERS AND WATER COURSES ☞227—OFFICERS OF IRRIGATION DISTRICT—BREACH OF TRUST.

The officers of an irrigation district who had assessed and collected money to pay the interest on its bonds and had failed to so apply it, might be sued at law for money had and received.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 318; Dec. Dig. ☞227.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

227 F.—36

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Bill by J. Paul Thompson against the Emmett Irrigation District and W. H. Shane and others, as directors, and R. B. Shaw, as treasurer. From an order dismissing the bill, complainant appeals. Order set aside, with direction to proceed with the case on the equity side of the court.

This is an appeal from an order of the District Court dismissing appellant's bill of complaint in equity. The appellant was plaintiff in the court below. The dismissal was upon the ground that the plaintiff had a plain, adequate, and complete remedy at law. The bill as amended alleged that the defendant Emmett Irrigation District was organized on or about the 13th day of September, 1910, under and pursuant to an act of the Legislature of the state of Idaho approved March 9, 1903, and the acts amendatory thereof; that at an election held on December 3, 1910, the electors of the district authorized an issuance of the bonds of the district in the amount of $1,100,000; that thereafter all the proceedings relating to the organization of the district and the authorization of the bonds were confirmed by the District Court having jurisdiction of the subject-matter, and upon appeal to the Supreme Court of the state the judgment of the District Court was affirmed; that thereafter the district, acting through its board of directors, caused the bonds of the district to be issued, sold, and delivered to the amount of $900,000; that said bonds were coupon bonds, negotiable in form and payable to bearer, and were issued as provided in section 2397 of the Revised Codes of Idaho; that, relying upon the decision of the Supreme Court of the state of Idaho adjudging and decreeing that the district had been legally organized, and that the bonds had been lawfully issued and were a valid and binding obligation of the district, and relying also upon the recitals contained in the bonds that the same had been issued in compliance with the laws of the state of Idaho, and that all things required to make the same the legal, valid, and binding obligations of said district had been done and had happened, and had been performed, the plaintiff, prior to January 1, 1914, without notice or knowledge of any fact whatsoever impairing the validity of said bonds, or any of them, purchased for a valuable consideration $101,000 of said bonds, and ever since has been the owner and holder thereof; and that after the said district had sold and delivered its said bonds, the board of directors of said district determined the benefits which would accrue to each of the tracts and subdivisions of land within the district on account of the purchase and construction of the irrigation works, and which were paid for by the proceeds from the sale of the said bonds, and said board, as directed by law, caused the cost of said works to be apportioned over each tract and subdivision of land in proportion to the benefits received; that the action of the board in apportioning such benefits was duly approved and confirmed by the District Court having jurisdiction thereof by a judgment and decree of the said court entered on the ———— day of June, 1913; that no appeal had been taken therefrom, and the decree had become final; that all interest coupons of said bonds maturing on January 1 and July 1, 1913, have been paid; that the interest coupons maturing January 1, 1914, have not been paid; that the plaintiff is the owner of interest coupons maturing on January 1, 1914, to the amount of $3,030; that on October 22, 1913, the board of directors of the district levied an assessment against all of the lands in the district for the payment of interest maturing January 1 and July 1, 1914; that a large number of the landholders and taxpayers of the district have paid the tax so levied and assessed against their said lands for the payment of interest on the bonds held by the plaintiff and the other bondholders; but the district and its treasurer and board of directors have failed and neglected to use any of the moneys so collected to pay the interest on said bonds maturing January 1, 1914, but have allowed default to be made in the payment of such interest; that the plaintiff caused to be presented to the treasurer of said district for payment the interest coupons maturing January 1, 1914, on his said bonds, amounting to $3,030, and

demanded payment thereof, but, notwithstanding the said treasurer had in his possession and in his custody and under his control the interest fund belonging to said district and collected as aforesaid from the taxpayers in said district for the purpose of paying such interest, he declined to pay the same, and said defendants have wrongfully and without cause declined to apply the moneys collected from the taxpayers of said district to the payment of the interest due on said bonds, or in payment of the coupons held by the plaintiff, and unless enjoined and restrained by the court the defendants will either return such money to the persons from whom the same was collected, or will divert such money from the interest fund and use it for other purposes, and will not apply it to the payment of interest, or to any purpose for the benefit of the holders of said bonds; that default in payment will be made by the said defendants from time to time as each installment of interest on said bonds becomes due and payable; that the principal of said bonds will mature serially, commencing on the first day of January, 1922, and extending over a period of 10 years, as provided in section 2397 of the Revised Codes of Idaho; that should the plaintiff and the other holders of said bonds be required to bring suit against the district as each installment of interest on said bonds matures, numerous suits will be required, and should the plaintiff be delayed in bringing suit until all of said bonds have become due and payable, great and irreparable injury will be sustained by the plaintiff and by all holders of said bonds because of loss of interest and the uncertainties and unsettled conditions for many years, which would destroy the market value of said bonds pending the determination of the liability of said district for the said bonds and said coupons: that it would be impossible for the said district and the taxpayers therein to pay the whole of said bond issue and the accumulated interest thereon by one levy or assessment; that the same can only be paid in installments extending over a long period, as provided in said bonds and as contemplated by the laws of the state of Idaho relating to such matters. The plaintiff further alleges that unless the defendants are restrained and enjoined by the court, they will not only divert or appropriate for other uses, or return to the taxpayers, the moneys collected for the payment of interest on said bonds, but will allow default to be made in the steps and proceedings required to be taken by them in order to make legal and valid the sale of property in said district for delinquent taxes, and will permit the taxpayers who have paid no taxes to wholly escape the penalties of default, and escape the payment of said taxes.

In an amendment to the bill it is alleged, among other things, that the defendants sometimes assert and charge that a portion of the said bonds, to wit, about one-fifth thereof, were issued and sold by the district without any consideration, or any adequate consideration, being paid therefor; but it is alleged that the defendants do not state or pretend to know which of said bonds were so issued, and do not identify them by number or otherwise, so that any of the present holders of said bonds, or any other person, can learn or ascertain what bonds defendants refer to as having been sold illegally or without adequate consideration, or any consideration, being paid therefor; that by reason of such general, vague, and indefinite charges against the outstanding bonds of said district a cloud is thrown upon the validity or legality of all of the bonds of said district, including the bonds held by the plaintiff, and the market value of all such bonds is thereby greatly depreciated, if not entirely destroyed. The plaintiff alleges that he brings this suit for himself and all other holders of bonds of said district who may desire to join in this proceeding and pay their proper proportion of the costs.

The remedy sought by the plaintiff is a temporary injunction pending the hearing, and a perpetual injunction thereafter, restraining the defendants from doing certain things mentioned, among others from diverting, or otherwise appropriating or using for any purpose other than for the purpose of payment of the interest on the bonds of said district, the moneys collected for or hereafter paid into the interest fund created for the payment of interest on the bonds of said district; and that the defendants be required to apply the moneys in said interest fund to the payment of the interest due on said bonds; and that upon final hearing it be adjudged and decreed that the

said bonds are legal and valid obligations of the district; and that the plaintiff herein have such other and further relief as the circumstances of the case may require and as the court shall deem just and equitable.

The defendants interposed a motion to dismiss the bill as amended, upon the objection that the plaintiff had a plain, speedy, and adequate remedy at law, to wit, an action at law against the defendant Emmett Irrigation District for judgment upon the defaulted coupons owned by the plaintiff, with the right to enforce such judgment, if one should be recovered, by a writ of mandate. The court below sustained this objection to the bill, but with leave to transfer the cause to the law side of the court as authorized by General Equity Rule No. 22 (198 Fed. xxiv, 115 C. C. A. xxiv). The plaintiff declining to make such transfer, the bill was ordered dismissed.

J. H. Richards, Oliver O. Haga, and McKeen F. Morrow, all of Boise, Idaho, for appellant.

J. M. Thompson, of Caldwell, Idaho, and Fremont Wood and Dean Driscoll, both of Boise, Idaho, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1-3] For the present purposes the allegations of the bill must be taken as true. They state a case for the removal of a cloud upon the title to personal property. It has been held that such a case is within the jurisdiction of a court of equity. 6 Pomeroy's Equity Jurisprudence, § 729; Sherman v. Fitch, 98 Mass. 59; Voss v. Murray, 50 Ohio St. 19, 32 N. E. 1112; Rosenbaum v. Foss, 4 S. D. 184, 56 N. W. 114; Stebbins v. Perry County, 167 Ill. 567, 47 N. E. 1048; Earle v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012; Magnuson v. Clithero, 101 Wis. 551, 77 N. W. 882; New York & New Haven Ry. Co. v. Schuyler, 17 N. Y. 592.

This jurisdiction is recognized as existing in a federal court of equity by section 8 of the act of March 3, 1875 (18 Stats. 472), incorporated into section 57 of the Judicial Code. Jellenik v. Huron Copper Min. Co., 117 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Louisville & Nashville Ry. Co. v. Western Union Tel. Co., 234 U. S. 369, 371, 34 Sup. Ct. 810, 58 L. Ed. 1356.

The refusal of the defendants to pay the interest coupons attached to the bonds of the district is based upon the claim that about one-fifth of the bonds issued and sold by the district were sold without consideration, or any adequate consideration, being paid therefor, but this claim is made without any statement as to which of said bonds were so issued, and without designating such bonds by number or otherwise so that the holders of the bonds generally can learn or ascertain which particular bonds the defendants claim to have been illegally issued, or issued without adequate consideration. This assertion or claim on the part of the defendants, and their refusal to pay the interest on any of the bonds, depreciates their value in the market and casts a cloud upon the title of the entire issue.

In the case of New York & New Haven Ry. Co. v. Schuyler, 17 N. Y. 592, the New York Court of Appeals had before it a similar state of facts relating to the stock of the corporation. Spurious stock had been issued and was in the hands of numerous persons. The stock on

its face was, in all respects, like the legally authorized stock. The existence of the spurious stock cast a cloud upon the title of the entire issue and greatly depreciated its market value. Suit was brought by the corporation for the purpose of removing the cloud cast upon the genuine certificates, and to secure a judgment determining which of the certificates were valid and which were invalid. The court, referring to the jurisdiction of courts of equity in such a case, said:

"There is no head of equity jurisdiction more firmly established than that which embraces the cancellation of instruments which are capable of a vexatious use after the means of defense at law may become impaired or lost, or when they are calculated to throw a cloud upon the title or interest of the party seeking relief. But the jurisdiction does not universally attach on the mere ground that the deed or other contract is invalid. * * * If * * * the invalidity does not appear on their face, the jurisdiction is not confined to instruments of any particular kind or class. Whatever their character, if they are capable of being used as a means of vexation and annoyance, if they throw a cloud upon title or disturb the tranquil enjoyment of property, then it is against conscience and equity that they should be kept outstanding, and they ought to be canceled. These principles of general jurisprudence are believed to be decisive in favor of the right of this corporation to demand the cancellation of the false stock and to maintain a suit in equity for that purpose. On their face, as we have seen, the certificates of this stock are undistinguishable from those which are genuine and true. They confer, therefore, upon each holder a prima facie right as a stockholder. The evidence of such right must, in every case, be repelled by showing that the certificate does not represent the actual stock of the company, and it is impossible to say that the means of repelling these claims will always be as perfect as they were when the frauds in which they originated were first discovered. * * *

"If, as we have held, no just claim against the corporation arises out of these certificates, it is plainly unconscientious and inequitable that they should be kept on foot. Their very existence, outstanding, is unjust, because it must, of necessity, exercise a most depressing influence upon the real stock of the corporation. We all know how sensitive are values in property of this description; and what conceivable facts could cast a deeper shadow over every genuine stockholder's interest than a spurious issue of $2,000,000 of stock, evidenced by certificates apparently valid, and under which every holder boldly and confidently asserted his claim? The fact is not alleged in the complaint, but we can scarcely err in supposing that, on the discovery of these frauds, every share of valid stock must at once have lost nearly one-half of its market value. That depression must continue, in a greater or less degree, while the certificates are allowed to stand. A decision against one of them in an action founded upon it is not a determination against any other one, and cannot, while the others are outstanding, restore to the genuine stock the value which justly belongs to it. To say that the shareholders must remain in such a condition of insecurity and doubt, and must hold their shares under such a depression, would be to sanction a species of injustice which ought to be prevented. These shares of stock are a description of property as much entitled to invoke the protective remedies peculiar to courts of equity as any other."

If a court of equity, upon the suit of the corporation, has jurisdiction, under the circumstances of the case cited, to cancel spurious stock as a cloud upon the title of an owner of genuine stock, it seems clear that a court of equity under similar circumstances would have jurisdiction of a suit to determine whether illegal bonds have been issued by a corporation, and, if so, by a proper decree to remove the cloud cast upon such issue and upon the title of the holders of the legal bonds of the corporation, and especially must this be so where, as in the present case, the bonds are to mature serially, and no bond

will mature, or become due and payable, until the 1st day of January, 1922, and until that date no judgment at law can be obtained on any of the bonds determining their validity.

[4] But there still remains the question whether a stockholder can institute such a suit where he has alleged that he brings the suit for himself and all other holders of bonds who may choose to join in the proceedings. We think he may, and there are cases supporting that view of the law.

In Stebbins v. Perry County, 167 Ill. 567, 47 N. E. 1049, the Supreme Court of Illinois had before it a suit in equity brought by a stockholder against Perry county, Ill., the holder of certain stock alleged to be illegal, and also against the Belleville & Southern Illinois Railway Company, a corporation charged with having issued the illegal stock. The purpose of the suit was to determine the validity of the stock held by Perry county. It was alleged that as long as Perry county was recognized as a stockholder and said stock remained uncanceled on the books of the company, the stock of the company was depreciated, and the complainant was in danger of losing his just share of the earnings and dividends of the company; that there was danger that said county would fraudulently assign or transfer said certificates of stock and thereby make necessary a multiplicity of suits to enforce and establish the complainant's rights. The complainant alleged that he brought the suit in his own behalf, as well as in behalf of all stockholders in the company who might join with him in the proceeding. The court held that the complainant had the right to invoke the equitable jurisdiction of the court to remove the cloud upon the title to his stock. We think the rule established by these two cases is in accordance with sound reasoning, and should be followed in the present case.

[5] But there is another ground of jurisdiction which we think was properly invoked in this case, and that is the jurisdiction which courts of equity exercise over trustees in the performance of their duties. The officers of the irrigation district stand in the relation of trustees for the bondholders of the district. The moneys collected by them from the taxpayers for the payment of the interest on the bonds constitute a trust fund which cannot be applied or diverted to any other purpose. They have collected money from the taxpayers for the payment of the interest on the bonds of the district, and they are not applying that money to such purpose. This is a diversion pro tanto of that fund, and they are chargeable with breach of trust for such diversion.

[6-8] But the defendants contend that the remedy is at law to recover the interest due upon the bonds, and upon the refusal of the defendants to pay the judgment, should a judgment be recovered, the plaintiff could proceed by mandamus to compel payment, and such proceeding would be a plain, adequate, and complete remedy. It is the duty of the court to give full force and effect to section 267 of the Judicial Code, providing that:

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

This was originally section 16 of the act of September 24, 1789 (1 Stat. 73–82, c. 20), afterwards incorporated into the Revised Statutes as section 723. It has been before the Supreme Court in numerous cases.

In Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655, the court, referring to the original section, said:

"This court has been often called upon to consider the sixteenth section of the judiciary act of 1789, and as often, either expressly, or by the course of its decisions, has held that it is merely declaratory, making no alteration whatever in the rules of equity, on the subject of legal remedy. It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

In the present case an action at law upon the bonds cannot be maintained until they become due seven years hence. In the meantime the breach of trust on the part of the defendants in failing to pay the interest on the bonds will depreciate their value, if the bonds and coupons do not become entirely valueless. In this situation, the present suit in equity will be practical, efficient, and prompt in determining once and for all the validity or invalidity of the bonds and coupons attached thereto, and it is manifest that a multiplicity of suits at law upon the coupons as they become due, the only present remedy at law, cannot afford such a practical and efficient result in the administration of justice. But we need not pursue this phase of the inquiry further, since we are dealing now with the element of trust, which has always been a ground of independent equitable jurisdiction.

In Taylor v. Benham, 5 How. (46 U. S.) 233, 274, 12 L. Ed. 130, the Supreme Court said:

"Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law, for money had and received, or in equity, as a trustee, for a breach of trust."

This is precisely the position of the defendants in this case. They may be sued at law for money had and received, but they may also be sued in equity for breach of trust, if they have failed to perform their duties as trustee.

In Oelrichs v. Spain, 15 Wall. (82 U. S.) 211, 21 L. Ed. 43, the action was in equity to enforce liability for damages under injunction bonds. It was insisted that the complainant had a complete remedy at law, and that the bill should have been dismissed. In answering this objection the Supreme Court said:

"Upon looking into the record it is clear to our minds, not only that the remedy at law would not be as effectual as the remedy in equity, but we do not see that there is any effectual remedy at all at law. If the injunction bonds were sued upon at law, and judgments recovered, a proceeding in equity would still be necessary to settle the respective rights of the several obligees to the proceeds. The direct proceeding in equity will save time, expense, and a multiplicity of suits, and settle finally the rights of all concerned in one litigation. Besides, there is an element of trust in the case which, wherever it exists, always confers jurisdiction in equity."

In Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167, the bill was in equity to stay an action in ejectment and to remove a cloud upon the plaintiff's title to certain real estate. It was contended by the defendant that equity had no jurisdiction of the case by reason of the fact that the controversy related to legal title only, and that the plaintiff had a plain, adequate, and complete remedy at law. The court, referring to section 723 of the Revised Statutes, said:

"It was not intended to restrict the ancient jurisdiction of courts of equity, or to prohibit their exercise of a concurrent jurisdiction with courts of law in cases where such concurrent jurisdiction had been previously upheld."

In McKee v. Lamon, 159 U. S. 317, 322, 16 Sup. Ct. 11, 13 (40 L. Ed. 165), the court said:

"There can be no doubt of the general proposition that where money is placed in the hands of one person to be delivered to another, a trust arises in favor of the latter, which he may enforce by bill in equity, if not by action at law."

In Clews v. Jamieson, 182 U. S. 461, 479, 21 Sup. Ct. 845, 852 (45 L. Ed. 1183) the court said:

"The fact that the relief demanded is a recovery of money only is not important in deciding the question as to the jurisdiction of equity. * * * 'A court of equity will always, by its decree, declare the rights, interest, or estate of the cestui que trust, and will compel the trustee to do all the specific acts required of him by the terms of the trust. It often happens that the final relief to be obtained by the cestui que trust consists in the recovery of money. This remedy the courts of equity will always decree when necessary, whether it is confined to the payment of a single specific sum, or involves an accounting by the trustee for all that he has done in pursuance of the trust, and a distribution of the trust moneys among all the beneficiaries who are entitled to share therein.'"

The court refers to Oelrichs v. Spain, supra, as authority for the rule that, there being "an element of trust in the case," that element, "wherever it exists, always confers jurisdiction in equity."

To the same effect are the able and interesting decisions of Judge Shiras of the Northern District of Iowa, in Vickrey v. City of Sioux City (C. C.) 104 Fed. 164; Burlington Sav. Bank v. City of Clinton, Iowa (C. C.) 106 Fed. 269; Farson et al. v. City of Sioux City (C. C.) 106 Fed. 278.

In Jewell v. City of Superior, 135 Fed. 19, 67 C. C. A. 623, the suit was in equity. The city under its charter had issued municipal improvement bonds, and had pledged assessments levied upon property benefited therefor. There was a deficiency in the amount collected for such improvements, and the trial court had decreed that, on account of such deficiency the bondholder was entitled to such proportion of the moneys collected by the city as the amount of bonds of each class held by him bore to the total amount of bonds issued against each of the improvements. With respect to the action of the trial court in limiting the amount of recovery of the bondholder to his pro rata share of the fund to which the holders of all the bonds were entitled, the Court of Appeals said:

"This fund, derivable from the assessments. was a trust fund, pledged to the payment of all of the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of bonds. It is true that equity favors the vigilant, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit a breach of trust owing to other cestuis que trustent, by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principle of equity which would warrant such a decree."

This case, presenting the question of equity jurisdiction with respect to a pro rata distribution of the fund in the hands of the trustees among the bondholders, touches an important question which appears to be involved in the present case, and illustrates the efficiency of equity jurisdiction as a remedy for questions of the character of those involved in the present case.

Counsel for the defendants cite cases where it has been held that a court of equity has no jurisdiction to compel municipal officers to levy taxes for the payment of bonds, either with or without a previous judgment at law. But that question is not now involved in this case, and may never be, and we do not think it necessary to discuss its possible application to future proceedings. Cases are also cited where actions against defaulting corporations on their bonds have been prosecuted to judgment at law, followed by a writ of mandamus, and it is contended that the remedy has been found to be plain, adequate, and complete. But in none of the cases cited was the remedy at law so remote and uncertain as in the present case, where an unavoidable delay of seven years in the bringing of an action at law upon the bonds may mean the loss of all the evidence on behalf of the plaintiff and the consequent destruction of all his rights; and, with the exception of the case of Hausmeister v. Porter, Treasurer (C. C.) 21 Fed. 355, in none of them is the concurrent jurisdiction of a court of equity expressly denied to afford relief, and in this excepted case we do not find that the question of a cloud on title and a breach of trust were suggested as grounds for equity jurisdiction.

We are therefore of opinion that the equitable jurisdiction of the court should be sustained for the reason that upon the facts alleged in the bill of complaint a case is stated for the removal of a cloud on the title to personal property, and involves an element of trust, and upon the whole case the remedy at law will not be as plain, adequate, and complete, nor as practical and efficient to the ends of justice as the present action.

The order of the District Court dismissing the bill of complaint will be set aside, with directions to proceed with the case on the equity side of the court. Costs to the appellant.