GAS SECURITIES CO. v. ANTERO & LOST PARK RESERVOIR CO. et al.[*]

(Circuit Court of Appeals, Eighth Circuit.   May 13, 1919.)

No. 5158.

1. COURTS ⚖⇒322(3)—JURISDICTION OF FEDERAL COURT—ALLEGATION OF CITIZENSHIP.

An allegation in a bill of the citizenship of a corporation carries with it that of the citizenship of its directors, where they appear in the suit only as representatives of the corporation.

2. INJUNCTION ⚖⇒114(3)—NECESSARY PARTIES—DEFENDANTS.

Where a bill asks no relief against a person but that defendants be restrained from interfering with his performance of a contract which it is alleged he is able and willing to perform, he is not a necessary party defendant.

3. WATERS AND WATER COURSES ⚖⇒230(4)—ISSUANCE OF BONDS BY IRRIGATION DISTRICT—TRUST FUND.

Where the owners of arid lands have organized an irrigation district under a statute, and the district has issued and sold to the public its ne-

gotiable bonds, which are a lien on the lands therein, there is a definite obligation on its part to devote the proceeds to the irrigation of the lands, creating a trust relation between the district and its bondholders, which trust the latter may enforce in equity.

4. WATERS AND WATER COURSES ⬤➝230(4)—IRRIGATION DISTRICTS—TRUST RELATION TO BONDHOLDERS.

Under Colorado Irrigation Act, § 3452, providing that the title to all property acquired under its provisions shall vest in the irrigation district, and shall be held by it in trust "for the uses and purposes set forth in this act," a district cannot, after using some of the funds acquired from the sale of bonds in the prosecution of a plan of irrigation, as against its bondholders abandon all plans of irrigation.

5. SPECIFIC PERFORMANCE ⬤➝74—CONTRACTS ENFORCEABLE—CONSTRUCTION CONTRACTS.

Under some circumstances a court may decree specific performance of a construction contract.

6. SPECIFIC PERFORMANCE ⬤➝17—PERSONS ENTITLED TO ENFORCE PERFORMANCE —INTEREST IN SUBJECT-MATTER.

Bondholders of an irrigation district *held* entitled to enforce specific performance of a contract between the district and a third party, who was willing to perform, where its abandonment by the district would defeat the purpose for which it was organized, and leave the bondholders without security.

7. SPECIFIC PERFORMANCE ⬤➝12—DEFENSES—BREACH OF CONTRACT.

A party to a contract who aided and abetted actions by others which were the sole cause of a breach of contract by the other party cannot urge such breach as a defense to a suit for specific performance.

8. ESTOPPEL ⬤➝62(6)—IRRIGATION DISTRICT—CONTRACTS.

An irrigation district which has sold bonds and expended the proceeds in execution of a contract for an irrigation system which is nearly completed is estopped to set up the invalidity of the contract in a suit by its bondholders to require it to complete the contract.

Elliott, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Colorado; John A. Riner, Judge.

Suit by the Gas Securities Company against the Antero & Lost Park Reservoir Company and others. Decree for defendants, and complainant appeals. Reversed.

Platt Rogers, of Denver, Colo. (James Grafton Rogers, of Denver, Colo., on the brief), for appellant.

L. F. Twitchell, of Denver, Colo. (Goudy, Twitchell & Burkhardt and Owen & Clark, all of Denver, Colo., on the brief), for appellee Antero & Lost Park Reservoir Co.

Hubert L. Shattuck, of Denver, Colo. (I. B. Melville and Max D. Melville, both of Denver, Colo., on the brief), for appellee East Denver Municipal Irrigation Dist.

Before SANBORN and STONE, Circuit Judges, and ELLIOTT, District Judge.

STONE, Circuit Judge. This is an action in equity by appellant, owner of bonds of the East Denver Municipal Irrigation District, against the Antero & Lost Park Reservoir Company, the Antero Land & Irrigation Company, the East Denver Municipal Irrigation Dis-

trict, the Interstate Trust Company, the Colorado National Bank, and the members of the board of directors of the irrigation district, as such and individually. To this bill two separate, but identical, motions to dismiss were filed, one by the Reservoir Company, and the other by the irrigation district and the members of the board of directors of the district. These motions were sustained, and the bill dismissed generally. From this order the Gas Company appeals. The question thus presented is the vulnerability of the bill to the attack of the motions to dismiss.

The cause of action alleged by the bill is as follows: That prior to October, 1909, the Reservoir Company was the owner of an irrigation system consisting of the Antero reservoir, having a maximum storage capacity of 85,600 acre feet, with a feeder ditch and (through ownership of the entire capital stock of the Northern Colorado Irrigation Company) of the Highline Canal, about 70 miles long, with certain priority water rights; that for the purpose of effecting a sale of this property the Reservoir Company during that year conceived the plan of having formed an irrigation district to which the property might be sold for the bonds of such district; that in pursuance of that plan it brought into being the Land Company, a corporation, which it thereafter procured to organize the irrigation district, and to make with the district a contract by which the above property, together with such work as might be necessary to complete the same for the uses of the district, was to be exchanged for bonds of the district; that the district was so organized; that on August 30, 1910, the Land Company, with the approval and on behalf of the Reservoir Company, for the purpose of making a sale of the above property of the Reservoir Company, contracted with the district to deliver to it a complete irrigation system for $3,000,000 of the bonds of the district; this system, as required by this contract, consisted of the Antero reservoir, which was to be improved by increasing its storage capacity to 71,000 acre feet, and by facing its dam with concrete; the Highline Canal, which was to be enlarged and extended; construction of a system of distributing laterals (including rights of way therefor), and construction of a system of two distributing reservoirs within certain survey sections, with a capacity of 9,000 and 4,000 acre feet, respectively. As to the method, time, and conditions of payments, the contract provided that upon filing by the Land Company of a bond for $100,000, securing the performance of its contract, the entire bond issue of $3,000,000 would be deposited with the Continental Trust Company as trustee, to be paid out by it as follows: $1,125,000 (less amount required to improve the Antero reservoir under the contract) upon delivery to the trustee of a warranty deed conveying the Antero reservoir, $675,000 upon delivery to the trustee of the entire capital stock of the Northern Colorado Irrigation Company, $32,500 upon delivery to trustee of warranty deed conveying the Irondale reservoir; all of the above three payments being subject to deduction of 10 per cent., to be withheld until the entire system be completed, and accepted; the balance to be paid on estimates of the construction work, except, apparently, certain retained percentages, all final sums to be

paid 90 days after completion of the work. There was also a provision fixing, for estimation purposes, the values of facing the Antero reservoir and constructing the Abbott and Terminal distributing reservoirs, and providing that, if either of these distributing reservoirs should not be completed and conveyed according to the specifications, the estimated cost of such completion, with 15 per cent. retained, should be returned by the trustee to the district, but that the district should still have a right to damages on the bond. The bill further alleges that the bonds were authorized to be payable in series from 1921 to 1930; that during the negotiation of this contract, upon demand of the board of the district, the Reservoir Company, by two resolutions which it delivered to the district, approved said contract, and agreed to carry out the contract in so far as it related to things to be done or not to be done by it, and that it would negotiate a contract with the directors of the district for the carriage of water storage in the Tollgate reservoir; that, in accordance with the contract, the bonds were delivered to the Interstate Trust Company (substituted for the Continental); that no bond was made by the Land Company; that thereafter, because of difficulties in placing the bonds, as represented by the officers of the Reservoir and Land Companies, the contract was altered by another dated August 29, 1912, whereby $250,000 in bonds were delivered in payment of certain rights of way, water rights, and filings for the purpose of completing by January 1, 1913, the extension of the Highline Canal and laterals, as provided in the earlier contract, so that water might be rented by the district and used upon the lands during the completion of the system, and an extension for completing the entire system was made to January 1, 1914; that the work provided for by the contracts was not done by the Reservoir or Land Companies, but that they induced one Fred L. Lucas to undertake the completion, on their behalf, of the contracts; that pursuant to this arrangement three contracts of different date, but forming part of the same transaction, were made: one (December 14, 1912) between Lucas and the Reservoir Company, by which he was to pay $250,000 cash and $1,000,000 of district bonds for warranty deed to the district of the Antero reservoir and all the capital stock of the Northern Colorado Irrigation Company ($50,000 cash on or before January 15, 1913, when the deed and stock would be placed in escrow until the irrigation system as contracted for should be accepted by the district, and the remaining $200,000, due on or before January 15, 1915, and the stock paid over); another (December 30, 1912) between Lucas and the Land Company, assigning to him the two contracts with the district, and obligating him to complete the work with any modifications thereafter entered into; a third (February 4, 1913) between Lucas and the district (as represented by the board of directors), consenting to the above assignment, and modifying the prior construction contracts by providing that in lieu of the Abbott and Terminal reservoirs (combined capacity 13,000 acre feet), he should increase the contracted capacity of the Antero reservoir by 14,600 acre feet; that these contracts between Lucas and the district and Lucas and the Land Company were known to and agreed to by the Reservoir Company; that

February 4, 1913, Lucas paid the Reservoir Company the $50,000, and thereafter it placed the deed and capital stock in escrow with appellee the Colorado National Bank; that Lucas entered upon the Antero reservoir and Highline Canal, and proceeded with the work required by his contract until 90 per cent. had been fully performed; that the unperformed portion was almost entirely work to be done on the Antero reservoir; that during the progress of this work the district delivered to Lucas thereon $673,500 in bonds; that during this time bonds for $10,000 each for purchase of the Abbott reservoir and Terminal reservoir sites were paid to the owners thereof, and bonds for $20,000 were paid for a ditch and water rights from Plum creek, these latter bonds, being a portion reserved under the contract on account of the elimination of the Abbott and Terminal reservoirs, were delivered to H. G. Clark, president of the Reservoir Company, who then knew that said Abbott and Terminal reservoirs were not to be constructed; that from about October 1, 1913, the Reservoir Company has excluded Lucas from its properties (where the unfinished work was to be done), and has prevented him from completing his contract; that this action of the Reservoir Company was prompted by an opportunity to sell its said property to better advantage to another purchaser, the city of Denver; that in pursuance of such design, in disregard of its contractual obligations and without attempting any cancellation of such obligations, it attempted to dispose of those properties, and was prevented only by suit brought by strangers to this action; that, because of these acts of the Reservoir Company, Lucas has been prevented from completing the work and delivering it to the district, and from performing his contract with the Reservoir Company, although he is and has always been able, ready, and willing to do so; that there is no other source of irrigation of these lands which, without irrigation, cannot pay the outstanding bonds, and earn the interest thereon; that, long prior to the interference of the Reservoir Company, appellant purchased, in due course, district bonds amounting to $628,500, with attached coupons, which remain wholly unpaid, with no effort by the district or its officers to pay same; that at all times it was understood by the district, Reservoir Company, and Land Company that the proceedings authorizing the issue of the bonds were public proceedings, which would show that the bonds were to be paid for a completed system of irrigation, and therefore they combined to give to the purchaser of such bonds in the open market the assurance that they were issued and negotiated upon the basis of an irrigation district, with a completed system of irrigation comprising the Antero reservoir and Highline Canal, with the extensions and enlargements thereof necessary to the irrigation of the district; that the district has failed, neglected, and refused to compel the performance of said contracts, to restrain the Reservoir Company from interfering with Lucas, to perform its contract and escrow agreement, or to acquire funds to care for the bonds and interest, but, on the contrary, has aided and abetted that company in interfering with Lucas, and that it is in default to its bondholders; that the bondholders are the only sufferers through these defaults, and by reason of the neglect and re-

fusal of the district to secure said irrigation system to said district there is no relief except for equity to compel all of said defaulting parties "to specifically perform their several obligations and contracts, and granting such other or different relief as may be appropriate, and plaintiff avers that the said Lucas is ready and willing to keep and perform all the obligations assumed by him, and to do all things necessary to entitle said district to a conveyance by said Reservoir Company of the irrigation system agreed to be conveyed to said district."

The prayer of the bill is:

(a) To restrain the Reservoir Company from interfering with Lucas in completing the system "in accordance with his several contracts with said irrigation district and said Reservoir Company and said Land Company."

(b) "That upon the completion of said system the said district and the said Interstate Trust Company be required to deliver to said Reservoir Company or to said Lucas, to be by him delivered to said Reservoir Company, the said $1,000,000 in the bonds of said district, and that upon the delivery of said bonds, and the payment of the balance of said $250,000 due to said Reservoir Company by the terms of its contract with the said Lucas, and as stated in the escrow agreement of said Reservoir Company, that the said Reservoir Company be ordered and decreed to specifically perform its obligations to convey to said district the said Antero reservoir and the said Highline Canal by delivering to said district the said deed of said Antero reservoir, and the said assignment of the stock of the Northern Colorado Irrigation Company as deposited in escrow with the said Colorado National Bank."

(c) To restrain the Reservoir Company from altering its title to the property here involved.

(d) "That in the event that by reason of the acts and doings of the said district and the said Reservoir Company and the said Land Company, either acting jointly or severally, the said Lucas shall be unable to complete said system or to pay said balance of $250,000, that the said Reservoir Company be ordered and decreed to deliver to said district the deed heretofore executed by it, conveying the said Antero reservoir, and its assignment of the stock of the said Northern Colorado Irrigation Company, or, if such instrument should be destroyed, then that a like deed and assignment should be made and delivered to said district."

(e) To restrain the bank from delivering the deed or stock to other than the district until further order.

(f) To restrain the district from interfering with Lucas or declaring him in default by reason of interference from the Reservoir Company, to annul any such proceeding, and command performance of its contract with Lucas.

(g) General relief.

Summarized, in a very general manner, the bill sets forth, as grounds for relief, that appellant is the holder for value of bonds based upon the completion of the irrigation system under a contract which would have been performed but for wrongful acts of the Reservoir and Land Companies (abetted by the district), and the annihilation of value of those bonds unless those companies and the district are compelled to desist from such wrongful acts and thus permit the performance of the contract. The relief sought is the restraint of the continuance of such wrongful acts, the maintenance of the status quo so that the contract may be fully performed, and the compulsion of performance on the part of the companies, district, and Trust Company.

The propositions insisted upon in the motions to dismiss are:

(1) No proper showing on the face of the bill of diverse citizenship.

(2) Absence of necessary parties defendant, Lucas, the city, and the county of Denver.

(3) Lack of equities enforceable in this action or in the manner here sought.

(4) Lack of privity of plaintiff in the contract to enforce specific performance.

(5) No showing of injury to appellant by matters alleged in the bill.

(6) The relief sought would require the substitution of the discretion and management of the court for that of a municipal corporation.

(7) This character of contract will not be specifically enforced because such enforcement would require supervision, and injunction will not be granted where specific performance would not be enforced.

(8) No proper showing of legal, proper, or sufficient tender or offer of performance or efforts creating a right of action.

[1] 1. The challenge of jurisdiction, as a federal court, on the ground that the necessary diversity of citizenship is not shown, is based upon the fact that the citizenship of the individual defendants constituting the board of directors of the district is not alleged. Although in the title or style of the case they are named "individually and as constituting the board of directors" of the district, no complaint is made in the body of the bill of any act as individuals, and no relief is asked against them as such. There is the clear allegation of citizenship of the district as a Colorado municipal corporation. This allegation carries the citizenship of directors where they appear in the suit only as representatives of the corporation. Thomas v. Board of Trustees, 195 U. S. 207, 25 Sup. Ct. 24, 49 L. Ed. 160.

[2] 2. The objection of lack of necessary parties is based upon the theory that Lucas, the city of Denver, and the county of Denver have interests which would be so affected by the determination of this controversy as to make it necessary that they be brought into it. As to Lucas the allegation is that he is ready and desirous of proceeding with his contract, no relief is asked as to him, and no order which could properly be based upon the bill could affect him other than by permitting him to do what the bill alleges he wishes to do. He is not a necessary party. The connection of the city of Denver, as shown by the bill, is that it was the purchaser to which the Reservoir Company sought to convey its property here involved. When the Reservoir Company halted Lucas in the performance of the irrigation system contract it negotiated a contract of sale of its property to the city of Denver for bonds of that city, and in pursuance thereof delivered to the city a back-dated deed to such property. The bill then alleges that, "immediately upon the making of said contract between the city of Denver and the said Reservoir Company, one Frank L. Birney, for himself and other freeholders and taxpayers of said city of Denver, instituted an action in the district court of the said city and county of Denver to restrain the carrying out of said contract, and the taking possession by said city of said properties

under said deed of conveyance, and the delivery of the bonds of said city or the proceeds thereof to the said Reservoir Company, the said Birney alleging in the complaint filed by him, among other things, that said properties had already been agreed to be conveyed to said irrigation district by said Reservoir Company, and that said agreement was in full force and effect, and that by reason thereof the said city could not obtain title to said premises, nor could it obtain any consideration for the bonds proposed to be delivered to said Reservoir Company." The result of that litigation, as alleged in the bill, was that after hearing it was, in August, 1916, adjudged that the said contracts of the said Reservoir Company with the said district and the said Lucas were in full force and effect, and that the said Reservoir Company could not convey good title to the city until the rights of said district and the said Lucas and all other rights growing out of said contracts had been disposed of, and the city was restrained from purchasing said properties and from delivering its bonds to the said Reservoir Company. The bill alleges that by reason of said judgment the said Reservoir Company is now in the ownership and possession of said "property." The above determination of the litigation effectually removed any interest the city of Denver might have, so far as shown by this bill, in the present controversy. The county of Denver is not mentioned in the bill, and we have not been enlightened as to any possible interest it might have in this suit. The conclusion is therefore that the bill reveals no defect in parties.

The remaining grounds of the motions of the Reservoir Company to dismiss are presented by it as based upon the propositions following: (1) That specific performance of these contracts cannot be enforced by appellant because (a) it is a third party to them; (b) it does not ask subrogation to the rights and duties of Lucas thereunder; (c) the contract is of a class requiring supervision, and (d) there exists a complete legal remedy; (2) the theory of enforcement of a trust cannot prevail because no such relation exists; (3) there is no right to compel the completion of any specific system of irrigation improvements.

The district separately urges, in addition, that the contract of February 3, 1913, between it and Lucas is not binding because not authorized nor ratified by the electors of the district, but that even if valid that contract was not performed, since it provided that the system should be completed by January 1, 1914, which was not done, and time was of the essence of the contract.

While not abandoned here, the claim that there is a clear, adequate legal remedy was not vigorously pressed. It has no merit. The levy of taxes against arid land or the sale of that land cannot, under the allegations of this bill, make appellant whole. It alleges that its only salvation is the procurement of the security of the lands under irrigation—that the arid lands as sole security leave its bonds valueless.

[3] Consideration of the grounds of the motions to dismiss requires, first, a definition of the legal relation between the parties and

the determination of their respective interests, rights, and duties; and, second, separate examination of some of these grounds. Appellant contends that it is the beneficiary in a trust wherein the district is trustee; that the execution of the trust requires the installation of an irrigation system; that the district had contracted for such a system, which incorporated the only available water supply for irrigating the district; that, when this system was near completion and about ready for delivery, the Reservoir and Land Companies, aided and abetted by the district (trustee), prevented such completion and delivery; that to permit such prevention will result in loss to the district of the only supply of water available for irrigating the district; that the trustee district refuses, and will continue to refuse, to prevent this result, which means the destruction of valuable property rights of appellant, a beneficiary. This trust status is denied by appellees. The circumstances, as shown in the bill, and their legal results we deem to be as follows: The district has put forth an issue of bonds payable "to bearer," and obviously intended for a negotiable security to be purchased by the investing public. It thus invited investment and promised security therefor. What security did it thus assure such investors should protect such investments? The bonds state upon their faces that they are "a lien upon all the real property in said district." Does this mean merely the arid, unirrigated, almost valueless land, or does it mean the land as made productive and valuable through a scheme of irrigation projected by the district? The difference is vital to all parties concerned. It was known by all parties to be the vital consideration in the minds of the bond-buying public. That public was not buying arid land nor loaning money upon such land as security. The landowners were contemplating no such transaction. They were given statutory power to form an irrigation district for no such purpose. They, planning the improvement of their low-priced lands, sought to borrow money for that one specific object, and offered such lands thus improved by that money as security for its repayment. The statute permitted them to organize a municipal corporation for the sole purpose of furnishing a convenient vehicle for the one purpose of making such improvements through funds so acquired. For no other purpose could they organize such a district; for no other purpose could they issue bonds of the district; for no other purpose could they expend the proceeds from the sale of such bonds. The object of being of the district is single and definite; its life work clearly outlined; its obligations to those who purchase its bonds clouded by no uncertainty. Suppose that after selling its bonds the directors and electors of the district should honestly change their views, and decide that the bond money could be better employed in building schools or roads therein, would the bondholders be powerless to intervene? When they have parted with their money upon the definite understanding that it will be used in a prescribed manner to increase, if indeed, not practically to create, their security, have they no right to prevent its diversion and practical loss to them which they can enforce in the courts of the country? The inquiry furnished its own answer. There remains the definition of the bound-

aries of this interest and right. The clear intention of the parties, acted upon by the bondholders through purchase of the bonds, creates a relation of trust. The terms of this trust are that the district will invest such funds in the irrigation of the lands in the district.

[4] The Irrigation Act (R. S. Colo. 1908, § 3452) provides that—

"The title to all property acquired under the provisions of this act shall immediately and by operation of law vest in such irrigation district, in its corporate name, and shall be held by such district in trust for, and is hereby dedicated and set apart for the uses and purposes set forth in this act."

These "uses and purposes" cannot be realized from such "property" unless the district construct or purchase therewith and thereafter maintain a system of irrigation. The district may have power to abandon all schemes for irrigation before any of this trust fund has been used. It may, subject to existing contract rights, have power to alter any such plans at any time it may, in its discretion, deem such alteration advantageous to the general object of the irrigation of the lands. But it certainly cannot, after expenditures from such funds in the prosecution of a plan of irrigation and while it has outstanding obligations, abandon *all* plans for irrigation. To do this would totally defeat the trust to the injury of the beneficiary where, as here alleged, it would leave the bonds valueless. Equity has ample power to protect the interests of beneficiaries. It has been held by the Court of Appeals for the Ninth Circuit that directors of irrigation districts organized under statutes practically identical with those here involved are trustees for the bondholders as to money collected from landowners to pay interest upon such bonds. Thompson v. Emmett Irr. Dist., 227 Fed. 560, 566, 142 C. C. A. 192.

While the above ground of equitable jurisdiction is sufficient for all purposes, it may be suggested that to permit the action of the appellees of which complaint is here made would border upon, if it did not enter, the domain of constructive fraud.

The general principle that where one has received money to be applied to a particular purpose he is liable to interested parties, as a trustee, for a diversion or misapplication thereof is illustrated by Taylor v. Benham, 5 How. 233, 274, 12 L. Ed. 130.

But it is objected here that such protection would entail the supervision of construction work and that such burden courts cannot and will not assume. The bill presents no such problem. Lucas had already finished 90 per cent. of the work satisfactorily when prevented for reasons in no way relating to the manner in which he was performing his contract. He is ready and willing to continue to completion in accordance with the contract. No relief is due, under the bill, unless the contract is properly performed. The appellees may protect themselves in that regard under the terms of their various contracts with Lucas. The only mandatory relief asked, even after full satisfactory performance by Lucas, is the delivery of deeds and bonds already placed in escrow for the very purposes asked in the bill.

[5] While the contract here was one of purchase of a completed irrigation system, appellees have treated it in respect to specific per-

formance as though it were a construction contract. Even so regarded, it may be noted that specific performance of a construction contract may be decreed. Wheeling Traction Co. v. Board of Commissioners of Belmont County, 248 Fed. 205, 160 C. C. A. 283; Board of Commissioners of Mattamuskeet Drainage District v. Wills & Sons (D. C.) 236 Fed. 362, 380.

[6] As illustrating the rights of bondholders to have specific performance of a contract between third parties and the bondmaker when the performance of the contract would affect the security back of the bonds, see Brown v. Guarantee Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468.

It is also urged that to grant the relief asked would be to control the supervision and discretion of the officers of a municipal or public corporation. The supervision by such of the construction work is not sought to be constrained in the slightest. With no lawful exercise of discretion is any interference asked. Under the allegations of the bill, the only discretion sought to be exercised by the district is to abandon, without cause, not only the existing contract for an irrigation system, but to do so under circumstances which it knows will result in definite loss of the only water supply available for the irrigation of the district. In short, it seeks to abandon all irrigation of the district at a time when the completed system is almost ready to be delivered, and when such action would render worthless the irrigation bonds in which it had induced appellant, as one of the public, to invest. The district has no discretion to commit an unlawful act to the injury of others.

The district contends that it should not be compelled to abide by the existing contract for the two reasons, that it has been vitally breached because not performed within the specified time, and because it never was binding upon the district since not ratified by the electors.

[7] As to the first contention little need be said. No matter how vital may be a breach of a contract, it furnishes no shield to one who, as here alleged, "has aided and abetted" the very actions which are solely responsible for that breach. The law permits no one to profit by his own wrong. As to the contention that the contract between Lucas and the district is not binding, the allegations of the bill and the governing statutes of Colorado concerning irrigation districts (of which we take judicial notice) reveal the following situation: Those statutes provide two ways in which an irrigation district may secure an irrigation system. It may contract for the doing of the work for the district (R. S. Colo. 1908, §§ 3450, 3455, 3462) or it may contract for the delivery of a complete system of irrigation (same, sections 3450, 3455).

If it adopts the former plan, it must secure public bids for doing the work and follow certain other requirements. If the latter plan, a different procedure is prescribed. The original contract with the Land Company, the creature of the Reservoir Company, was of the latter class, for the purchase of a complete system. It was executed in pursuance of the statutory requirements for that character of contract; it was stated in the contract itself that it was of that nature and

259 F.—28

all parties agree that such it was. The Lucas contract with the district was one of assignment of that contract as to the unperformed portions, with the changes following:

"It is further agreed that, in lieu of the Abbott and Terminal reservoirs which the said Lucas is by this contract released from constructing, the said Lucas will complete the Antero reservoir to the maximum storage capacity of thirty-six feet vertical height against the dam, at which height the capacity of the reservoir, according to the contour survey made under the supervision and certified to by the state engineer of the state of Colorado, is 85,600 acre feet."

The effect of this change was to release Lucas from any obligation imposed upon him to construct and deliver the Abbott and Terminal distributing reservoirs, and obligate him to increase the capacity of the main Antero reservoir without compensation additional or different from that provided in the original contract. The original contract provided for the separate valuation, for estimation purposes, of the Abbott reservoir at $205,000 and the Terminal reservoir at $120,000, and provided, as alleged, "that in the event that one or more of the said distributing reservoirs should not be completed or conveyed according to specifications, then that not less than the estimated cost of completing the same in bonds at par should be withheld by the trustee and returned to said district, together with the 15 per cent. retained on the work of said reservoir, it being understood, however, that the withholding of said bonds and the return of the same to the district should not operate as a waiver or satisfaction in full of any damages by the plaintiff to construct and convey any one of said reservoirs, and that the Land Company should be liable on its $100,000 bond for such damages." After the contract with Lucas was executed the bonds provided for reservation in the preceding quotation were set aside, and $20,000 of those so reserved thereafter expended by the district for sites for the Abbott and Terminal reservoirs. It is evident that the original contract contemplated and provided specifically for a failure to construct and deliver these two distributing reservoirs. Clearly such failure, under the above provision, was no such breach as to justify a refusal of performance of other provisions or rescission of the contract by the district. This Lucas contract was executed by the board of directors of the district. The powers of such a board are very great.

"The board shall have power, and it shall be their duty, to * * * manage and conduct the affairs and business of the district, make and execute all necessary contracts, * * * and generally to perform all such acts as shall be necessary to fully carry out the purposes of this act; * * * to construct, acquire or purchase any and all canals, ditches, reservoirs, reservoir sites, water, water rights, rights of way or other property necessary for the use of the district. * * * But no contract involving a consideration exceeding ten thousand (10,000) dollars, and not exceeding twenty-five thousand (25,000) dollars shall be binding, unless such contract shall be authorized and ratified in writing by not less than one-third of the legal electors of said district. * * *" R. S. Colo. 1908, § 3450; also see section 3451.

[8] There is nothing in the bill revealing that this Lucas contract was not entirely within the power of the board. A further consideration is present: that of estoppel of the district or the landowners

from urging such a defense against bona fide bondholders for value, where the allegations are that they have induced the investment, permitted the use of the proceeds in this very contract, and allowed the contract to continue for their benefit until almost fully performed, paying out large amounts of such bonds thereon. Tulare Irrig. Dist. v. Shepard, 185 U. S. 1, 19, 22 Sup. Ct. 531, 46 L. Ed. 773.

The petition is subject to none of the objections carried by the motions to dismiss. The judgment dismissing the petition is therefore reversed, and the case remanded for proceedings not inconsistent with this opinion.

Reversed.

ELLIOTT, District Judge, dissents.